EVERETTE B. BARNARD AND WIFE, DIANE S. BARNARD, PLAINTIFFS v. BOBBY ROWLAND, D/B/A BOBBY ROWLAND TIMBER & LOGGING, DEFENDANT & THIRD-PARTY PLAINTIFF v. JAMES M. FIFE AND WIFE, MICHELLE H. FIFE, THIRD-PARTY DEFENDANTS

No. COA97-1411

(Filed 2 March 1999)

**1. Appeal and Error— briefs—type size—double costs**

Double costs were assessed for violation of N.C.R. App. P. 26(f) where both briefs violated type size restrictions.

**2. Trespass— wrongful cutting of timber—sufficiency of evidence**

The trial court did not err in a trespass action arising from the cutting of timber by submitting to the jury plaintiff-Barnards' trespass claim or by denying defendant Roland's JNOV motion where the parties stipulated that the Barnards owned the property subject to the alleged trespass, and, viewed in the light most favorable to plaintiffs, the testimony at trial indicated that defendant Roland entered upon the Barnards' land without authorization, proceeded to cut timber, and that the Barnards were damaged thereby.

**3. Damages and Remedies— punitive damages—trespass and wrongful cutting of timber—double recovery**

The trial court erred in a trespass action arising from the cutting of timber by submitting the issue of punitive damages to the jury where plaintiffs sought damages for the value of the timber cut and the diminution in value of their land but elected to seek recovery under N.C.G.S. § 1-539.1 and relinquished any claim for punitive damages attendant to the common law claim. A plaintiff suing for unlawful cutting or removal of timber may recover either the difference in value of the property immediately before and after the cutting, in addition to punitive damages if appropriate under the facts, or the value of the timber itself doubled by

operation of N.C.G.S. § 1-539.1(a), but not both. Collecting puni-
tive damages under common law and statutory double damages
would amount to double recovery.

**4. Contracts— wrongful interference—directed verdict**

The trial court did not err by granting plaintiffs' motion for a
directed verdict on a counterclaim for wrongful interference with
contract arising from a claim for wrongful cutting of timber. The
record fails to reveal the requisite scintilla of evidence that plain-
tiffs acted without justification in opposing the logging opera-
tions; rather, as owner of adjoining real estate, plaintiffs' interest
in protecting their property from unauthorized logging activities
was without doubt reasonable and bona fide.

**5. Contracts— impossibility of performance and prevention—
no instruction—no prejudice**

The trial court did not err in an action arising from the cutting
of timber by not instructing the jury on the doctrine of impossi-
bility of performance. In assessing and denying the third-party
plaintiff's claim that the third-party defendants breached the tim-
ber contract, the jury necessarily considered whether it was
impossible for the defendant and third-party plaintiff to have
performed the contract or whether the third-party defendants
prevented him from doing so.

**6. Contribution— instruction not given—no prejudice**

There was no prejudice in an action arising from the cut-
ting of timber where the court failed to charge the jury on contri-
bution because the jury determined that defendant trespassed
"purposefully" and the trespass was thus not a result of a misrep-
resentation of property lines by the party letting the contract, so
that defendant had no claim for contribution.

Appeal by defendant and third-party plaintiff from judgment
entered 17 February 1997 by Judge Ted Blanton in Rowan County
District Court. Heard in the Court of Appeals 4 June 1998.

*J. Stephen Gray for defendant and third-party plaintiff.*

*B.S. Brown, Jr., for plaintiffs.*

*Inge and Doran, by Michael Doran, for third-party defendants.*

JOHN, Judge.

Defendant and third-party plaintiff Bobby Rowland (Rowland) appeals the trial court's denial of his motions pursuant to N.C.G.S. § 1A-1, Rule 50(b) (1990) for directed verdict and for judgment notwithstanding the verdict (JNOV). Rowland also contends the court erred by: (1) granting the directed verdict motion of plaintiffs Everette and Diane Barnard (the Barnards) on Rowland's claim of tortious interference of contract; and (2) failing to instruct the jury properly on the doctrines of impossibility of performance and prevention, and contribution. For the reasons discussed herein, we affirm in part, vacate in part, and remand with further instructions.

Pertinent facts and procedural history include the following: In early March 1995, Rowland entered into an oral agreement with third-party defendants James and Michelle Fife (the Fifes) for cutting and removal of timber located on the Fifes' property in Rowan County. Under the agreement, Rowland paid the Fifes $3,200.00 for a quantity of timber cut from their property, the exact amount of timber logged being disputed by the parties.

The Fifes, whose property adjoined that of the Barnards, did not designate to Rowland the precise boundaries of their tract. Regarding the Fife/Barnard boundary, however, Mr. Fife informed Rowland that a barbed and electric wire fence approximated the property line, and that if Rowland remained five to ten feet inside the fence, he "would definitely be all right."

Rowland commenced logging 14 March 1995. The next day, Mr. Barnard reported to the Rowan County Sheriff's Department (Sheriff's Department) that Rowland had cut or was about to cut three trees on the Barnard property. Although Rowland insisted he had purchased all trees on the Fifes' side of the fence, the fence was "bowed" and did not necessarily conform to the boundary between the Barnard property and that owned by the Fifes. Notwithstanding Mr. Barnard's objections, Rowland felled the three trees.

On 16 March 1995, Mr. Fife requested assistance from the Sheriff's Department in removing Rowland from the Fife property. According to Mr. Fife, Rowland's timbering activities were injuring neighboring properties and his conduct was not in conformance with the verbal agreement. On 18 March 1995, Rowland was escorted from the Fife property, whereupon Mr. Fife blocked the entrance so as to

BARNARD v. ROWLAND

[132 N.C. App. 416 (1999)]

prevent Rowland's return. In all, Rowland felled approximately sixteen trees located completely or partially on the Barnard property, including one approximately fifteen feet from the Fife/Barnard boundary.

The Barnards instituted the instant action 24 October 1995, seeking to recover from Rowland the value of the cut timber, the diminished value of their property, and punitive damages. Rowland answered, generally denying the allegations. He also counterclaimed against the Barnards, alleging wrongful interference with the timber contract, and cross-claimed against the Fifes, claiming they materially breached the agreement by "making it impossible for [Rowland] to finish the contract." Further, Rowland asserted a claim for contribution against the Fifes in the event he were to be found liable to the Barnards. The Fifes subsequently counterclaimed against Rowland, alleging breach of the logging agreement.

At trial, Rowland's motions for directed verdict at the conclusion of the Barnards' evidence and at the close of all the evidence were denied. However, the Barnards' motion for directed verdict on Rowland's counterclaim for tortious interference of contract was allowed. The court denied Rowland's requested jury instruction on the doctrine of impossibility of performance and prevention. The court also rejected the Fifes' motion for directed verdict on Rowland's third-party claim for contribution.

Following the jury's award of $1,244.00 to the Barnards as the value of the cut timber and $600.00 in punitive damages, Rowland moved for JNOV. On 17 February 1997, the trial court entered its ruling, declaring in pertinent part:

1) That the amount awarded to plaintiffs for damage to their wood, timber, shrubs or trees be doubled, pursuant to G.S. § 1-539.1.

2) That the plaintiffs have and recover judgment against the defendant in the principle amount of $2,488.00 for damages to trees, etc. and $600.00 for punitive damages.

. . . .

4) That the defendant's motion to set aside the verdict as being against the greater weight of evidence is denied.

Defendant timely appealed 21 February 1997.

BARNARD v. ROWLAND

[132 N.C. App. 416 (1999)]

I.

[1] As a preliminary matter, we note that each brief submitted herein violates N.C.R. App. P. 26(g) (Rule 26(g)). Rule 26(g) requires documents filed with this Court to appear in "at least 11 point" type, the term "point" referring to the height of a letter, extending from the highest part of any letter to the lowest part. *Id.; Lewis v. Craven Regional Medical Center*, 122 N.C. App. 143, 147, 468 S.E.2d 269, 273 (1996). Accordingly, a brief may not contain more than sixty-five (65) characters and spaces per line, nor more than twenty-seven (27) lines of double-spaced text per page. *See Lewis*, 122 N.C. App. at 147, 468 S.E.2d at 273. Although Rule 26(g) does not speak in terms of characters per inch (cpi), a standard not equivalent to point size, "[t]en characters per inch is . . . the standard we will apply to the briefs filed with this Court." *Id.*

Rule 26(g) may also be met by a brief presented in the

same type-setting as used by this Court in its slip opinions—Courier 10 cpi—which insures no more than sixty-five (65) characters per line and twenty-seven (27) lines per page. Courier 10 cpi may be achieved in computer and word processing technology by utilizing no smaller than size twelve (12) Courier or Courier New font.

*Howell v. Morton*, 131 N.C. App. 626, 628, 508 S.E.2d 804, —— (1998).

In the case *sub judice*, all briefs presented to this Court contain in excess of ninety-one (91) characters per line and thus violate Rule 26(g). It should be unnecessary to reiterate that our appellate rules are mandatory, *see Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 568 (1984), so as to "prevent unfair advantage to any litigant," *Lewis*, 122 N.C. App. at 147, 468 S.E.2d at 273, and that violation thereof subject an appeal to dismissal. *See Wiseman*, 68 N.C. App. at 255, 314 S.E.2d at 566. While emphasizing that the ever-increasing volume of materials filed with this Court require uniformity and compliance with the Rules so as to facilitate our disposition of matters before us, we nonetheless elect in this instance to exercise our discretion under N.C.R. App. P. 2 and consider the instant appeal on its merits. However, double costs are assessed, *see* N.C.R. App. P. 34(b)(2) (court of the appellate division may impose sanction of "double costs"), the first set to be shared equally among the parties, *see* N.C.R. App. P. 35(a) (if judgment is "modified in any way, costs shall be allowed as directed by the court"), the second to be paid in equal shares by counsel for the parties.

BARNARD v. ROWLAND

[132 N.C. App. 416 (1999)]

## II.

## A.

[2] Rowland first argues the trial court erred in denying his motions for directed verdict and JNOV on the issues of trespass and punitive damages and in denying his JNOV motion on the issue of breach of contract. We conclude the latter assignment of error has been waived and that the former is unfounded.

The question presented by a defendant's directed verdict motion is whether the evidence, considered in the light most favorable to plaintiff, is sufficient to take the case to the jury and to support a verdict for plaintiff. *See Henderson v. Traditional Log Homes*, 70 N.C. App. 303, 306, 319 S.E.2d 290, 292, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 923 (1984). If there is more than a scintilla of evidence "to support plaintiff's *prima facie* case in all its constituent elements," the motion for directed verdict should be denied. *Douglas v. Doub*, 95 N.C. App. 505, 511, 383 S.E.2d 423, 426 (1989). Appellate review of a directed verdict is limited to those grounds asserted by the movant before the trial court. *See Southern Bell Telephone and Telegraph Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991).

A JNOV motion is "essentially a renewal of a motion for directed verdict," *Smith v. Price*, 74 N.C. App. 413, 418, 328 S.E.2d 810, 815 (1985), *aff'd in part, rev'd in part on other grounds*, 315 N.C. 523, 340 S.E.2d 408 (1986), and thus must be preceded by a motion for directed verdict at the close of all evidence. *See Whitaker v. Earnhardt*, 289 N.C. 260, 264, 221 S.E.2d 316, 319 (1976). On appeal, we apply the same standard of review as that for a directed verdict. *See Northern Nat'l Life Ins. Co. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). Notably, "[t]he movant cannot assert grounds [for the JNOV] not included in [his] motion for directed verdict." *Love v. Pressley*, 34 N.C. App. 503, 509, 239 S.E.2d 574, 580, *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978).

In the case *sub judice*, the sole ground asserted for Rowland's directed verdict motion was insufficiency of the evidence supporting the Barnards' claims of trespass and punitive damages. Moreover, Rowland did not contest the sufficiency of the evidence regarding the Fifes' breach of contract counterclaim. As such, appellate review of the trial court's denial of defendant's JNOV motion addressed to that issue has been waived. *See Lee v. Bir*, 116 N.C. App. 584, 587, 449

S.E.2d 34, 37 (1994), *cert. denied*, 340 N.C. 113, 454 S.E.2d 652 (1995). We therefore consider only whether the trial court properly determined "more than a scintilla of evidence" sustained presentation of the issues of trespass and punitive damages to the jury. *See Snead v. Holloman*, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991).

The elements of a claim of trespass are:

1) [t]hat the plaintiff was either actually or constructively in possession [or was the owner of described lands];

2) [t]hat the defendant made an unauthorized, and therefore an unlawful, entry [upon said lands]; [and]

3) [t]hat the plaintiff suffered damage by reason of the matter alleged as an invasion of his rights of possession.

*Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952).

In the case *sub judice*, the parties stipulated the Barnards owned the property subject to the alleged trespass. Further, viewed in the light most favorable to plaintiffs, testimony at trial indicated Rowland entered upon the Barnards' land without authorization, proceeded to cut timber, and that the Barnards were damaged thereby. As Rowland testified:

Q: You didn't buy any of Mr. Barnard's timber, did you?

A: No, sir.

Q: And you had no right at all to cut any of Mr. Barnard's timber—

A: No, sir.

Q: —did you?

A: Huh-uh (no).

Q: Who sawed down those three trees?

A: I had four or five [employees] cutting trees. I don't know which one cut them down.

Q: All right. But you knew they were cut?

A: Oh, yeah.

In addition, Mr. Barnard stated:

Q: All right. And when he got to your house, what did you do?

A: . . . I showed [Rowland], you know, how my fence line right at that area was. I said, "You're not going to cut these trees," He said, "Oh yeah," he said, "I'm going to cut them trees," I said, "No, you ain't." I said, "They're not [Fife's]. They're mine."

. . . .

Q: And this damage is on your side of the fence?

A: Yes, sir.

Q: How did he get to this area?

A: He came through my gate.

. . . .

Q: Came on your property?

A: Yes.

The foregoing was corroborated by Richard Brandon, a registered surveyor, who testified in relevant part:

Q: Okay. And all the trees that are shown on this plat, other than the one that does not have a number, are either on the line or on Mr. Barnard's property?

A. Correct.

Q: Did Mr.—? In looking at these trees and all, did Mr. Barnard identify them to you as trees that had been cut by Mr. Rowland?

A: Yes, sir.

Taking all inferences in favor of the Barnards, more than a scintilla of evidence supported each element of plaintiff's trespass claim, *see Snead*, 101 N.C. App. at 464, 400 S.E.2d at 92, and the trial court did not err in submitting this issue to the jury or by denying defendant Rowland's JNOV motion.

## B.

[3] Rowland next maintains the trial court erred in submitting the issue of punitive damages to the jury. At trial, Rowland argued that submission of the issue would allow plaintiff a "double recovery." *See West*, 100 N.C. App. at 670, 397 S.E.2d at 766 (appellate review limited to grounds asserted by movant to trial court). This contention has merit.

Two alternative measures of damages are available in a suit claiming unlawful cutting of timber:

> One gives the landowner the difference in the value of his property immediately before and immediately after the cutting. The other gives plaintiff the value of the timber itself. This latter value is then doubled by reason of N.C.G.S. 1-539.1(a) which allows plaintiff to recover double the value of timber cut or removed.

*Britt v. Georgia-Pacific Corp.*, 46 N.C. App. 107, 109, 264 S.E.2d 395, 398 (1980) (citations omitted). One may not "recover both . . . statutory damages and damages for the diminution in value of . . . property." *Id.* at 110, 264 S.E.2d at 398. Rather, a party makes an election between the remedies by "proceed[ing] upon [one or the other] theory at trial." *Id.*

N.C.G.S. § 1-539.1(a) (1995) provides in relevant part:

> (a) Any person, firm or corporation not being the bona fide owner thereof or agent of the owner who shall without the consent and permission of the bona fide owner enter upon the land of another and injure, cut or remove any valuable wood, timber, shrub or tree therefrom, shall be liable to the owner of said land for double the value of such wood, timber, shrubs or trees so injured, cut or removed.

G.S. § 1-539.1(a). G.S. § 1-539.1 pointedly authorizes doubling timber value, but not doubling loss in property value. *See Britt*, 46 N.C. App. at 110, 264 S.E.2d at 398 (1980); *see also* Dan B. Dobbs, *Trespass to Land in North Carolina Part II: Remedies for Trespass*, 47 N.C.L. Rev. 334, 337 (1969).

Statutes in derogation of the common law or statutes imposing a penalty must be strictly construed. *See Simmons v. Wilder*, 6 N.C. App. 179, 181, 169 S.E.2d 480, 481 (1969). Accordingly,

> everything [must] be excluded from the operation of [G.S. § 1-539.1] which does not come within the scope of the language used, taking the words in their natural and ordinary meaning.

*Jones v. Georgia-Pacific Corp.*, 15 N.C. App. 515, 518, 190 S.E.2d 422, 424 (1972). For example, parties proceeding under G.S. § 1-539.1 may not recover under the common law remedy of "trover to recover the value of the goods" in their changed condition. *Id.* at 518, 190 S.E.2d at 424-25.

Similarly, in the instant case, G.S. § 1-539.1 may not afford the common law remedy of punitive damages since it is itself punitive. *See* 1945 N.C. Sess. Laws 837 (HB 371, later enacted as G.S. § 1-539.1, entitled "An Act Providing for Double and *Punitive* Damages in Actions for Unlawful Injury, Cutting or Removal of Timber") (emphasis added); *Woodard v. Marshall*, 14 N.C. App. 67, 69, 187 S.E.2d 430, 432 (1972) (describing G.S. § 1-539.1 as imposing penalty), and 22 Am. Jur. 2d *Damages* § 814 (1988) (statutes providing for double damages and regarded "as a penalty . . . subject the wrongdoer to an extraordinary liability by way of punishment"). Consequently, a plaintiff may not collect punitive damages under common law, and recover statutory double or "punitive" damages under G.S. § 1-539.1(a) because doing so would amount to double recovery. *See Britt*, 46 N.C. App. at 110, 264 S.E.2d at 398 (plaintiff cannot recover both common law and statutorily provided remedies), *accord Jones*, 15 N.C. App. at 518, 190 S.E.2d at 424; *cf. Johnson v. Tyler*, 277 N.W.2d 617, 619 (1979) (both punitive and statutory treble damages may not be recovered under Iowa statute prohibiting unlawful cutting of timber since to do so would constitute double recovery).

Therefore, a plaintiff suing for unlawful cutting or removal of timber may recover *either* 1) the difference in value of the property immediately before and immediately after the cutting, in addition to punitive damages if appropriate under the facts, *or* 2) the value of the timber itself, doubled by operation of G.S. § 1-539.1(a). A plaintiff may not recover both.

In the case *sub judice*, the Barnards sought 1) damages for the value of timber cut by Rowland, and 2) the "damage to [plaintiffs'] land," *i.e.*, diminution in value. At trial, however, the Barnards abandoned the latter claim, having introduced "no evidence" establishing "the value of the property before and after" the alleged trespass of Rowland. The Barnards thus elected to seek recovery under G.S. § 1-539.1 and relinquished any claim for punitive damages attendant to the common law claim. The trial court therefore erred in submitting the issue of punitive damages to the jury, and the jury award of such damages in the amount of $600.00 must be reversed and vacated.

## C.

[4] Rowland next contends the trial court erred "in allowing [the Barnards'] motion for directed verdict on defendant's counterclaim of wrongful interference of contract." We disagree.

Upon a plaintiff's motion for directed verdict challenging a defendant's counterclaim, the test is whether all the evidence tending to support defendant's counterclaim, taken as true and considered in the light most favorable to the defendant, is sufficient to submit that claim to the jury. *See Sloan v. Wells*, 37 N.C. App. 177, 179-80, 245 S.E.2d 529, 531 (1978), *rev'd on other grounds*, 296 N.C. 570, 251 S.E.2d 449 (1979).

The elements of tortious interference of contract are:

(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

*Embree Construction Group v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).

Significantly, in granting the Barnards' directed verdict motion, the trial court noted the absence of proof regarding the fourth element of Rowland's claim, stating:

the key element here that this motion directs the Court toward is the fourth of the elements needed to be proved—acted without justification. I think there is not any evidence to take to the jury that he acted without justification at all.

Whether an actor's conduct is justified depends upon:

the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor and the contractual interests of the other party.

*Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). Further, justification is lacking if " 'the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the [accused] which is involved.' " *Id.* at 220, 367 S.E.2d at 650 (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 91, 221 S.E.2d 282, 294 (1976)). However, if a particular act is done for a "legitimate . . . purpose, [the act] is privileged." *Id.* at 221, 221 S.E.2d at 650.

Suffice it to state that careful review of the record fails to reveal the requisite scintilla of evidence that Mr. Barnard acted without jus-

BARNARD v. ROWLAND

[132 N.C. App. 416 (1999)]

tification in opposing the logging operations of Rowland. *See Snead*, 101 N.C. App. at 110, 400 S.E.2d at 92. Rather, as owner of adjoining real estate, Mr. Barnard's interest in protecting his property from unauthorized logging activities without doubt was "reasonable and bona fide." *See Smith*, 289 N.C. at 91, 221 S.E.2d at 294. As the evidence failed regarding a "constituent element[]" of Rowland's counterclaim, *see Douglas*, 95 N.C. App. at 511, 383 S.E.2d at 426, the trial court did not err in granting the Barnards' motion for directed verdict thereon.

D.

**[5]** Finally, Rowland asserts the court erred "by failing to instruct the jury on the doctrine of impossibility of performance and prevention," and by failing to provide specific instruction on "the doctrine of contribution." We do not agree.

Upon request for a special instruction " 'correct in law and supported by the evidence, the trial court must give the requested instruction, at least in substance.' " *State v. Thompson*, 118 N.C. App. 33, 36, 454 S.E.2d 271, 273 (quoting *State v. Tidwell*, 112 N.C. App. 770, 773, 436 S.E.2d 922, 924 (1993)), *disc. review denied*, 340 N.C. 262, 456 S.E.2d 837 (1995). Further, "[i]t is the duty of the trial judge without any special requests to instruct the jury on the law as it applies to the substantive features of the case arising on the evidence." *Millis Construction Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 509, 358 S.E.2d 566, 568 (1987).

Erroneous or incomplete instructions notwithstanding, the "party asserting error must show from the record not only that the trial court committed error, but that the aggrieved party was prejudiced as a result." *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986); *see also* N.C.G.S. § 1A-1, Rule 61 (1990) (Rule 61). Moreover,

> [w]hen the jury returns answers to other issues which establish the rights of the parties irrespective of the answer to the questioned issue, or the rights of the parties are not dependent upon the answer to the issue returned by the jury, any error in the instructions upon such issue is harmless.

*Mode v. Mode*, 8 N.C. App. 209, 213, 174 S.E.2d 30, 33-34 (1970).

The trial court herein submitted the following pertinent issues to the jury:

Issue One

. . . .

(b) . . . was the trespass done purposefully or wilfully?

     Answer: Yes

. . . .

Issue Four

(a) Was the defendant, Bobby Rowland, the agent of the third-party defendant, James Fife, at the time of the trespass by Rowland on the property owned by Barnard?

     Answer: No

. . . .

Issue Five

(a) Did the defendant, Bobby Rowland, breach his contract with the third-party defendants, James and Michelle Fife?

     Answer: Yes

. . . .

Issue Six

(a) Did the third-party defendants, James and Michelle Fife, breach their contract with the defendant, Bobby Rowland?

     Answer: No

Assuming *arguendo* the court erred by not instructing the jury upon impossibility of performance and prevention, and contribution, we nonetheless hold Rowland has not demonstrated he has been prejudiced thereby.

For instance, in asserting that the Fifes breached the timber contract, Rowland alleged in his third-party claim:

> [t]he third-party defendants, without justification or excuse, wrongfully and materially breached the contract with the third-party plaintiffs *by making impossible for the third-party plaintiff to finish the contract*, by, but not limited to the following:

. . . .

C. The third-party defendant *James M. Fife demanded that the third-party plaintiff, the defendant herein, leave the premises* prior to the third-party plaintiff removing all of the timber that had been bargained for pursuant to a threat of violence against the third-party plaintiff.

D. *The third-party defendant, James M. Fife prevented the defendant from sowing grass* on both sides of the creek.

(Emphasis added).

In assessing and denying Rowland's claim that the Fifes breached the timber contract, the jury necessarily considered whether it was impossible for defendant to have performed the contract or whether the Fifes prevented him from doing so. Defendant has not shown that "a different result would likely have ensued had the [alleged] error not occurred," *Warren v. City of Asheville,* 74 N.C. App. 402, 409, 328 S.E.2d 859, 864, *disc. review denied,* 314 N.C. 336, 333 S.E.2d 496 (1985), *i.e.,* had the jury been separately instructed on the doctrine of impossibility of performance and prevention. We therefore hold that any such error was harmless. *See* Rule 61.

**[6]** Similarly, the jury's findings "establish[ed] the rights of the parties irrespective of the answer to the question[]" of contribution, *Mode,* 8 N.C. App. at 213, 174 S.E.2d at 33, and any error by the trial court in failing to charge the jury on this issue was also harmless. *See id.* Notably, the jury determined Rowland trespassed upon the Barnards' property "purposefully" and that he was not acting on behalf of or as "the agent of the third-party defendant [Fifes]." Rowland's trespass was thus not "a result of a misrepresentation of property lines by the party letting the contract," *see* G.S. § 1-539.1(c), and Rowland therefore had no claim to contribution. *See id.; cf.* N.C.G.S. § 1B-1(a) (1983) (contribution not proper "in favor of any tortfeasor who has intentionally caused or contributed to the injury"). Accordingly, Rowland has failed to show he was "prejudiced as a result" of the lack of a specific jury instruction on contribution, *Lawing,* 81 N.C. App. at 162, 344 S.E.2d at 104, and any error by the trial court in that regard was harmless. *See* Rule 61.

In sum, we hold the trial court did not err in denying Rowland's motions for directed verdict and JNOV, or by granting the Barnards' motion for directed verdict on defendant's tortious interference of contract counterclaim. Further, Rowland was not prejudiced as a result of the court's failure to instruct the jury with respect to the doc-

trines of impossibility of performance and prevention, or contribution. However, we reverse the trial court's submission of the issue of punitive damages to the jury and its subsequent judgment including an award of such damages. This cause is therefore remanded to the District Court of Rowan County for entry of a new judgment in favor of plaintiff not inconsistent with the opinion herein. Double costs are assessed, the first set payable in equal shares by the parties, the second set to be paid in equal shares by counsel for the parties.

Affirmed in part; reversed in part and remanded with instructions. Double costs.

Judges McGEE and SMITH concur.