Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc., 2015 NCBC 12.

STATE OF NORTH CAROLINA

COUNTY OF WILSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1038

VEER RIGHT MANAGEMENT
GROUP, INC.,

        Plaintiff,

        v.

CZARNOWSKI DISPLAY SERVICE,
INC. and TIMOTHY JENKINS,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

{1}     THIS MATTER is before the Court on Defendant Czarnowski Display Service, Inc.'s ("Czarnowski") Motion to Dismiss ("Motion"), made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motion is DENIED, without prejudice to reconsidering the claims upon a motion for judgment on the pleadings or summary judgment.

*Ellis & Winters LLP by Jonathan D. Sasser and C. Scott Meyers for Plaintiff Veer Right Management Group, Inc.*

*Parker, Poe, Adams & Bernstein, LLP by Melanie Black Dubis and Jami Jackson Farris and Hogan Marren, Ltd. by John Michael Tecson and Kelly McCloskey Cherf for Defendant Czarnowski Display Service, Inc.*

Gale, Chief Judge.

## I.    STANDARD OF REVIEW

{2}     On a motion to dismiss pursuant to Rule 12(b)(6), the Court inquires "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The Court may grant this motion to dismiss

if the Complaint reveals the absence of facts required to make out a claim for relief or if the Complaint reveals some fact that necessarily defeats the claim. *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

## II.   BACKGROUND

{3}    Plaintiff initiated this action on July 11, 2014, bringing claims for (1) breach of fiduciary duty, (2) aiding and abetting breach of fiduciary duty, (3) tortious interference with Defendant Timothy Jenkins's employment contract, (4) tortious interference with the United States Postal Service ("USPS") contract, (5) misappropriation of trade secrets, (6) civil conspiracy, and (7) unfair and deceptive trade practices.  The matter was designated a mandatory complex business case on July 14, 2014, and assigned to the undersigned on July 23, 2014.

{4}    The Court recites the following facts solely for purposes of this Motion, accepting the allegations of the Complaint as true without assuming the truth of Plaintiff's legal conclusions. *Walker v. Sloan*, 137 N.C. App. 387, 392, 592 S.E.2d 236, 241 (2000).  The Court acknowledges that Czarnowski denies the central allegations.

{5}    This case centers around Plaintiff Veer Right Management Group, Inc.'s ("VRMG") loss of a large trade show contract to its former subcontractor, Czarnowski.  VRMG served as primary contractor on the USPS trade show contract for eight years, with Czarnowski serving as its subcontractor.  Plaintiff alleges that due to VRMG's inability to meet USPS's increasing demands and abnormalities in a March 2013 audit, USPS ultimately elected to rebid the contract in June 2013. VRMG asserts that its competitor, Czarnowski, conspired to orchestrate the rebid with VRMG's former Vice President and part owner, Timothy Jenkins, who was the project leader for the USPS contract and, by 2011, dedicated all of his time to managing the contract.

{6}    During the rebidding process, USPS requested that Czarnowski make a separate proposal for the contract.  VRMG then partnered with Freeman Decorating Company ("Freeman"), who bid as the prime contractor with VRMG as

its subcontractor. Plaintiff alleges that after the first submission, a USPS agent informed a Freeman representative that Freeman appeared not to understand the scope of the work required for the contract, and that it should submit another bid with higher fees. VRMG and Freeman submitted a new proposal.

{7} On September 25, 2013, USPS awarded its trade show contract to Czarnowski because, according to Plaintiff, Freeman's proposal was "slightly higher than the costs proposed by Czarnowski." (Compl. ¶ 53.) VRMG learned that Czarnowski's proposal did not identify all of the individuals who would work on the contract, instead listing them as "To Be Determined." (Compl. ¶ 57.) A consultant for Czarnowski mentioned that Jenkins "would fit one of the 'To Be Determined' positions in the Czarnowski proposal." (Compl. ¶ 58.)

{8} Shortly after VRMG lost the contract, Jenkins left VRMG to work for Czarnowski and to manage the USPS contract. VRMG alleges it later discovered that, around the time Jenkins resigned, he used his work computer to forward VRMG's USPS documents to his personal email account, copied his laptop's hard drive before returning it to VRMG, sent confidential information concerning USPS sales leads to Czarnowski, and, after leaving VRMG, remotely copied its proprietary documents. (Compl. ¶¶ 59, 65, 66, 68.) VRMG complains it also discovered that Jenkins sent multiple emails to Czarnowski indicating that Jenkins had been helping Czarnowski for three months, including during the rebidding process, and that he had been promised employment in return for helping Czarnowski win the contract. (Compl. ¶ 63.) In one of these emails, sent to Czarnowski's consultant on October 1, 2013, Jenkins states, "three months ago, [Czarnowski's Vice President] told Mike to do what he had to do to get me on board." (Compl. ¶ 62.)

{9} Czarnowski asserts that, even assuming the allegations are true, Plaintiff has not adequately alleged any improper conduct or any conspiracy, but only that Czarnowski was recruiting Jenkins. Defendants claim that there can be no reasonable inference that Czarnowski asked Jenkins to purposely mismanage the USPS account. Plaintiff suggests that the clear inference is just the opposite: a *quid pro quo* agreement between Jenkins and Czarnowski that Jenkins would

foment USPS's discontent with VRMG's services and prompt USPS to rebid the contract in return for future employment at Czarnowski. In furtherance of such an agreement, Plaintiff alleges that Jenkins complained to VRMG's USPS contact that VRMG "did not work hard enough on the USPS contract" (Compl. ¶ 28), "had missed 'countless deadlines'" (Compl. ¶ 28), and was understaffed (Compl. ¶ 29). Plaintiff also alleges that Jenkins manufactured an error in an invoice that caused USPS to overpay VRMG approximately $34,000. (Compl. ¶ 36.)

{10} On September 12, 2014, Defendant Czarnowski filed the present Motion, seeking dismissal of the claims for aiding and abetting breach of fiduciary duty, tortious interference with Jenkins's contract and the USPS contract, misappropriation of trade secrets, civil conspiracy, and unfair and deceptive trade practices.

## III. ANALYSIS

### a. The Court Prudentially Defers Ruling on the Uncertain Claim of Aiding and Abetting Breach of Fiduciary Duty

{11} Plaintiff claims that, in offering Jenkins future employment, Czarnowski aided and abetted Jenkins's breach of his fiduciary duty to VRMG. Plaintiffs allege that Jenkins breached this fiduciary duty by conspiring with Czarnowski to steal the USPS contract away from VRMG, working with Czarnowski to prepare its competing bid, and sharing VRMG's confidential and proprietary information. (Compl. ¶ 76(a)–(f).) The Motion does not challenge Jenkins's underlying breach of fiduciary duty. Rather, Czarnowski challenges Plaintiff's claim that Czarnowski aided and abetted Jenkins's breach of fiduciary duty to VRMG by offering him employment.

{12} Whether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty remains an open question. *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC LEXIS 33, at *17 (N.C. Super. Ct. Oct. 19, 2007). This Court has previously examined this question and observed that

[i]t is undisputed that the Supreme Court of North Carolina has never recognized [a cause of action for aiding and abetting breach of fiduciary duty]. The only North Carolina Court of Appeals decision recognizing such a claim, *Blow v. Shaughnessy*, 88 N.C. App. 484, 364 S.E.2d 444 (1988), involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994).

*Tong v. Dunn*, 2012 NCBC LEXIS 16, at *11–12 (N.C. Super. Ct. Mar. 19, 2012) (some citations omitted) (internal quotations omitted), *reversed on other grounds*, 752 S.E.2d 669 (N.C. Ct. App. 2013); *compare Laws v. Priority Tr. Servs. of N.C., LLC*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009) (dismissing claim for aiding and abetting breach of fiduciary duty because "no such cause of action exists in North Carolina"), *with In re Vendsouth, Inc.*, No. 00-10112C-8G, 2003 Bankr. LEXIS 1437, *49 (M.D.N.C. Oct. 9, 2003) (relying on *Blow* for the proposition that "North Carolina law recognizes a cause of action for aiding and abetting breach of fiduciary duty").

{13}  The claim is governed by North Carolina law, but parties often urge this Court to adopt Delaware's case law, which has recognized a claim of aiding and abetting a breach of fiduciary duty. However, even in Delaware, the state of the claim is uncertain: its elements and the required pleading to satisfy them are evolving. *See, e.g.*, *In re Comverge, Inc. S'holders Litig.*, No. 7368-VCP, 2014 Del. Ch. LEXIS 240, at *66–71 (Nov. 25, 2014) (dismissing aiding and abetting breach of fiduciary duty claim because "the third party [did not] knowingly participate in the alleged breach—whether by buying off the board in a side deal, or by actively exploiting conflicts in the board to the detriment of the target's stockholders").

{14}  Both sides agree that *if* North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty, the elements would include: (1) violation of a fiduciary duty by the primary party; (2) knowledge of the violation by the aiding and abetting party; and (3) substantial assistance by the aider and abettor in achieving the primary violation. *See Blow*, 88 N.C. App. at 490, 364 S.E.2d at 447.

{15}     Here, Plaintiff joins the aiding and abetting claim with a civil conspiracy claim, including allegations which amount to Czarnowksi's substantial assistance in breaching Jenkins's fiduciary duty.  For reasons discussed below, the Court believes that the conspiracy claim is adequately alleged, sufficient to withstand Rule 12(b)(6).

{16}     Discovery as to the conspiracy claim and the aiding and abetting claim appears to be the same, or at least substantially overlapping, and the Court has not been able to discern any significant discovery relevant to the aiding and abetting claim but not to the civil conspiracy claim.  Consequently, an early ruling on the aiding and abetting claim would yield no apparent cost efficiencies.[1] Notwithstanding the uncertainty whether North Carolina recognizes an aiding and abetting claim, the Court, in its discretion, defers ruling on the Motion at this time insofar as it relates to that claim, without prejudice to revisiting the claim by later motion practice.

### b.  The Complaint Adequately Alleges an Agreement Sufficient to Protect the Claim of Civil Conspiracy Against Early Dismissal

{17}     This Court has allowed a conspiracy claim based on an agreement facilitating an underlying breach of fiduciary duty.  *See GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 29, 2011).  Nevertheless, Czarnowski challenges that Plaintiff has not adequately alleged an underlying agreement and therefore has failed to allege a basic element of a conspiracy claim.

{18}     There is no recognized cause of action for conspiracy that survives without a separate underlying tort or other wrong.  *Sellers v. Morton*, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (2008).  To state a claim for civil conspiracy, a plaintiff must allege "a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury."  *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416,

---

[1] Indeed, the conspiracy claim encompasses all of Defendants' alleged misconduct, while the aiding and abetting claim necessarily only pertains to events that occurred while Jenkins was still VRMG's officer and owed Plaintiff a fiduciary duty.

537 S.E.2d 248, 265 (2000) (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)).

{19} Czarnowski claims not only that Plaintiff has failed to allege an agreement but also that the allegations affirmatively demonstrate that Plaintiff will be unable to prove such an agreement. First, Czarnowski contends that Plaintiff's allegation that Jenkins "conspired with Czarnowski to take the USPS Tradeshow Contract away from VRMG and award it to Czarnowski as the prime contractor" is insufficient to show a conspiracy because VRMG does not "allege any meetings, conversations, or telephone calls which occurred between Czarnowski and Jenkins which supports [sic] this conclusory allegation of an agreement." (Def.'s Czarnowski Display Serv. Inc.'s Mem. Supp. Mot. Dismiss Pl.'s Compl. 14 (discussing paragraph 26 of the Complaint).) Second, Czarnowski urges that VRMG's injury, loss of the USPS contract, resulted from USPS's business decision to rebid it, not from Jenkins's and Czarnowski's acts. (*See* Compl. ¶¶ 32, 33, 41 (alleging that USPS unreasonably demanded discounts, requested certain VRMG employees not be permitted to work on project, and conducted an audit while VRMG's owners were on vacation).) Third, Czarnowski argues that VRMG itself has alleged that it lost the contract because its prices were too high. (Compl. ¶ 53 ("On September 25, 2013, the USPS Tradeshow Contract was awarded to Czarnowski. Freeman was informed that the costs in its proposal costs were slightly higher than the costs proposed by Czarnowski.").)

{20} Plaintiff counters that Czarnowski draws unfair inferences from the Complaint. Plaintiff points to other paragraphs that it argues clearly allege that Jenkins and Czarnowski joined forces to cause USPS to rebid and to give Czarnowski unfair access to VRMG inside information in exchange for Jenkins's subsequent employment.

{21} Again recognizing that the issue at this stage is solely whether Plaintiff has adequately alleged a claim, not whether it ultimately will be able to prove that claim, the Court concludes that Plaintiff has adequately alleged an

agreement, with subsequent harm caused by implementing the agreement, and that the conspiracy claim withstands Rule 12(b)(6).

### c.  Plaintiff Has Stated an Adequate Tortious Interference Claim

{22}    As to Plaintiff's claim for tortious interference with Jenkins's employment contract, Defendant Czarnowski contends (1) that the underlying contract was invalid and (2) that Plaintiff failed to allege that Czarnowski knew of the contract.  As to both the Jenkins contract and the USPS contract, Czarnowski urges that it was justified in hiring Jenkins because the Complaint on its face reveals that Czarnowski had a competitive privilege.

{23}    A tortious interference claim must allege the following elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against the third person; (2) the defendant knows of that contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) in so doing, the defendant acts without justification; and (5) the plaintiff consequently suffers actual damages.  *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 317, 498 S.E.2d 841, 850 (1998).

{24}    The Complaint adequately states the existence of a valid contract between VRMG and Jenkins.  A covenant not to compete is valid and enforceable if it is "(1) in writing; (2) reasonable as to terms, time, and territory; (3) made a part of the employment contract; (4) based on valuable consideration; and (5) not against public policy."  *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 636, 568 S.E.2d 267, 272 (2002) (quoting *Triangle Leasing Co. v. McMahon*, 327 N.C. 224, 228, 393 S.E.2d 854, 857 (1990)).  Plaintiff alleges that Jenkins signed a written noncompete and nondisclosure agreement based on valuable consideration: his promotion to Vice President of VRMG.  (Compl. ¶ 13.)  The reasonableness of its terms, time, and territory and its conformance with public policy are inquiries better taken upon a more complete factual record.  From the Complaint alone, the Court cannot conclude that the contract is invalid.

{25}     Additionally, the Complaint adequately alleges that Defendant Czarnowski knew about the contract, even though it does not expressly so state. The North Carolina Court of Appeals has suggested that failure to allege a defendant's knowledge of the underlying contract may be fatal to a tortious interference claim. *Holleman v. Aiken*, 193 N.C. App. 484, 500, 668 S.E.2d 579, 590 (2008) (explaining that even if plaintiff had alleged existence of a valid contract, he did not allege that defendants actually knew of the contract, which was also fatal to the claim). However, *Childress v. Abele* provides that an outsider, such as Czarnowski, "has knowledge of the contract within the meaning of the second element [of tortious interference] if he knows facts which give rise to the plaintiff's contractual right against the third person." 240 N.C. 667, 674, 84 S.E.2d 176, 182 (1954). The Complaint alleges that "Czarnowski knew that Jenkins was employed by VRMG, knew about all of his extensive responsibilities with VRMG, and knew about his family relationship with VRMG." (Compl. ¶ 82.) Taking these factual allegations as true, the Complaint adequately alleges that Czarnowski had the requisite knowledge of the contract.

{26}     Czarnowski's contention that it had a competitive privilege to hire Jenkins that defeats a tortious interference claim is, at this stage, also unavailing. Where the defendant acts for a legitimate business purpose, he enjoys a qualified privilege conditioned on his good-faith business interest. *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). Competition in business constitutes a legitimate business interest where it is "carried on in furtherance of one's own interests and by means that are lawful." *Id.* In other words, whether Czarnowski acted within the scope of its competitive privilege depends upon whether it acted "by means that are lawful," *id.*, and on "the circumstances surrounding the interference, [Czarnowski's] motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of [Czarnowski] and the contractual interests of [VRMG]," *Barnard v. Rowland*, 132 N.C. App. 416, 426, 512 S.E.2d 458, 466 (1999) (quoting *Peoples Sec. Life Ins. Co.*, 322 N.C. at 221, 367 S.E.2d at 650). Plaintiff alleges that Czarnowski had an

agreement with Jenkins that he would breach his fiduciary and contractual duties to VRMG by causing USPS to become dissatisfied with VRMG's services and sharing VRMG's confidential information with Czarnowski in return for future employment with the latter. (Compl. ¶¶ 28–29, 36, 59, 62–63, 65–66, 68.) Taking these factual allegations as true, there is a colorable claim that Czarnowski acted unlawfully, outside of the scope of any competitive privilege.

### d. Plaintiffs Have Adequately Alleged Misappropriation of Trade Secrets to Withstand Early Dismissal

{27} To plead misappropriation of a trade secret, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003). A plaintiff must also allege the acts by which the misappropriation was accomplished. *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" *Id.* at 327, 660 S.E.2d at 585–86 (quoting *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 511, 606 S.E.2d 359, 364 (2004) (citing *Analog Devices*, 157 N.C. App. at 469–70, 579 S.E.2d at 454)). For example, in *Washburn*, the North Carolina Court of Appeals held that allegations of "acquired knowledge of [a claimant's] business methods; clients, their specific requirements and needs; and other confidential information" did not sufficiently identify the trade secrets or misappropriation at issue. *Washburn*, 190 N.C. App at 327, 660 S.E.2d at 586; *see also Patch Rubber Co. v. Toelke*, No. 5:13-CV-379-BO, 2013 U.S. Dist. LEXIS 84104, at *11 (E.D.N.C. June 14, 2013) (ruling that "plans, pricing methods, processes, techniques, present and prospective customer lists, manufacturing processes, product formulations, recipes and customers' purchasing requirements, service requirements, product preferences,

and purchasing volumes" did not sufficiently identify "*specific*" trade secrets).  *But see Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 2002 NCBC LEXIS 2, at *38, 41–42 (N.C. Super. Ct. July 10, 2002) (ruling that customer information "including the identity, contacts and requirements" of customers can constitute a trade secret).

{28}    In contrast, the North Carolina Court of Appeals has stated that allegations of misappropriation of "pricing information, customer proposals, historical costs, and sales data" sufficiently identify trade secret information.  *GE Betz, Inc. v. Conrad*, ___ N.C. App. ___, 752 S.E.2d 634, 648–49 (2013), *petition for disc. rev. filed on other grounds*, No. 111P10-2 (N.C. Jan. 7, 2014).  Moreover, historical "data regarding operating and pricing policies can also qualify as trade secrets" when the misappropriator uses the information competitively.  *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375, 542 S.E.2d 689, 692 (2001) (internal citation omitted).  A federal court applying North Carolina law determined that allegations that a defendant misappropriated a plaintiff's pricing methodology to underbid the plaintiff sufficiently identified the trade secret and the means of misappropriation.  *ACS Partners, LLC v. Americon Grp., Inc.*, No. 3:09-CV-464-RJC-DSC, 2010 U.S. Dist. LEXIS 19907, at *27–29 (W.D.N.C. Feb. 12, 2010).

{29}    In the present case, Plaintiff has identified its

> compilations of information, methods, techniques, and processes that [it uses] in planning, organizing, and managing all aspects associated with identifying appropriate shows for their clients, pricing and budgeting, procuring space, setting up booths, staffing booths during the show, tracking sales leads generated by each show, tearing down booths after each show, and logistics between shows.

(Compl. ¶ 107.)  This allegation contains more than the generalized information at issue in *Washburn* and is more comparable to allegations found sufficient in *GE Betz* and *Byrd's Lawn & Landscpaing*.

{30}    In sum, Plaintiff has made sufficient trade secret misappropriation allegations to withstand dismissal under Rule 12(b)(6).  The adequacy of actual proof to support those allegations is best tested at the summary judgment stage.

e. **It Is Premature to Dismiss Any Unfair and Deceptive Trade Practices Claim in Light of the Court's Ruling on Other Claims**

{31} To bring a claim for unfair and deceptive trade practices, a plaintiff must allege "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. " *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (alterations in original) (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). Where it is "in or affecting commerce," misappropriation of trade secrets can form the basis for a claim under section 75-1.1 of the North Carolina General Statutes. *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659, 670 S.E.2d 321, 329 (2009); *see also Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *65 (N.C. Super. Ct. Nov. 3, 2011).  In appropriate circumstances, a claim for tortious interference may also support a section 75-1.1 violation. *Sunbelt Rentals*, 2002 NCBC LEXIS 2, at *47 (citing *Roane-Barker v. Se. Hosp. Supply Corp.*, 99 N.C. App. 30, 392 S.E.2d 663 (1990)). Accordingly, Plaintiff's claim for unfair and deceptive trade practices must await further adjudication of the other claims upon which it is based.

## IV.   CONCLUSION

{32} For the foregoing reasons, Defendant Czarnowski Display Service, Inc.'s Motion to Dismiss is DENIED, without prejudice to reconsidering the claims upon a motion for judgment on the pleadings or summary judgment.

IT IS SO ORDERED, this the 4th day of February, 2015.