SPX CORPORATION, PLAINTIFF v. LIBERTY MUTUAL INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, THE TRAVELERS INDEMNITY COMPANY, DEFENDANTS, AND ACE PROPERTY AND CASUALTY INSURANCE COMPANY AND CENTURY INDEMNITY COMPANY, DEFENDANTS

No. COA10-745

(Filed 5 April 2011)

**1. Insurance— New York law—duty to pay defense costs**

The trial court did not abuse its discretion by ruling that under New York law, an insurer has the duty to pay 100% of defense costs associated with every underlying asbestos claim in which the complaint alleged bodily injury or disease that potentially occurred during the period when the insured provided coverage.

**2. Constitutional Law— right to trial—New York law—allocation of defense and indemnity obligations**

The trial court did not err by ruling that under New York law, an insurer was not entitled to a trial to determine the appropriate method for allocating defense and indemnity obligations under equitable principles.

SPX CORP. v. LIBERTY MUT. INS. CO.

[210 N.C. App. 562 (2011)]

**3. Insurance— choice of law—last act to make binding contract**

The trial court did not err by holding that New York law, rather than Connecticut law, governed the application of defendant Traveler's policies. The last act to make a binding contract, receipt, and acceptance of the insurance policies, occurred in New York.

**4. Insurance— New York law—payment of defense costs**

The trial court did not abuse its discretion by applying New York law to require that defendant Travelers pay all of plaintiff SPX's defense costs.

**5. Compromise and Settlement— oral settlement—settlement conference—slip of tongue or misnomer**

The trial court did not err by enforcing an oral settlement. A slip of the tongue or misnomer cannot overcome statutory requirements and transform a settlement conference into a court-ordered mediation under N.C.G.S. § 7A-38.1.

**6. Evidence— statements made at mediation—oral settlement agreement—invited error**

The trial court did not err by considering statements made at mediation to find that an oral settlement agreement was reached despite a stipulation that all evidence produced at the mediation would be inadmissible. Having presented the trial court with evidence about what was said and done at the settlement conference, defendant Liberty may not now complain that the trial court considered that very evidence.

**7. Trials— judge acting as fact finder—presumed to rely solely upon competent evidence**

The trial court did not err by allegedly using its own personal knowledge from *ex parte* communications to resolve a disputed factual issue. Where competent and incompetent evidence is before a trial court, it is presumed that the court functioned as the finder of facts and relied solely upon the competent evidence.

**8. Judges— motion to recuse—personal knowledge—waiver**

The trial court did not err by refusing to recuse itself from resolving disputed factual issues where the trial judge had personal knowledge. A party may not argue its substantive point in the trial court with full knowledge of the alleged ground for disqualification, and then, upon losing on the merits, resort to a motion for recusal.

**9. Stipulations— willful violation—settlement agreement— sanctions**

The trial court did not err by imposing sanctions against defendant Liberty. Liberty willfully violated the stipulations it agreed to as part of a settlement agreement process, thereby frustrating the orderly and efficient resolution of the dispute.

**10. Appeal and Error— cross-appeal—unnecessary determination**

Although plaintiff SPX argued on conditional cross-appeal that the trial court erred by holding that defendant Liberty was entitled to a full and separate per occurrence deductible for each claim covered by its policies, this issue did not need to be considered because the Court of Appeals already affirmed the trial court's 13 March 2009 order.

Appeal by defendant Employers Insurance Company of Wausau from orders entered 2 October 2008 and 6 January 2010, by defendant The Travelers Indemnity Company from an order entered 26 May 2009, by defendant Liberty Mutual Insurance Company from an order entered 13 March 2009, and cross-appeal by plaintiff SPX Corporation from an order entered 20 November 2008 by Judge W. Erwin Spainhour in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 January 2011.

*Robinson, Bradshaw & Hinson, P.A., by David C. Wright, III, and Covington & Burling, L.L.P., by Benjamin J. Razi, for plaintiff-appellee and cross-appellant SPX Corporation.*

*Poyner Spruill, L.L.P., by Steven B. Epstein, for defendant-appellant Liberty Mutual Insurance Company.*

*York, Williams & Lewis, L.L.P., by R. Gregory Lewis, and Zelle, Hofmann, Voelbel & Mason, L.L.P., by Rolf E. Gilbertson, for defendant-appellant Employers Insurance Company of Wausau.*

*Higgins Law Firm, by Sara W. Higgins, and Steptoe & Johnson, L.L.P., by John R. Casciano, for defendant-appellant The Travelers Insurance Company.*

*Pinto, Coates, Kyre & Brown, P.L.L.C., by David L. Brown, and Siegal & Brown, by Martin F. Siegal, for defendants-appellees Ace Property & Casualty Company and Century Indemnity Company.*

## SPX CORP. v. LIBERTY MUT. INS. CO.

[210 N.C. App. 562 (2011)]

BRYANT, Judge.

Where New York law requires that each insurer must defend its insured if there is an asserted occurrence which could be potentially covered by its policy, even if another carrier may also be responsible, the trial court does not abuse its discretion in so ordering. Where New York law provides that the appropriate method for allocating defense obligations may be determined without trial, the trial court does not err in granting summary judgment on that basis. Where the last act to make a binding contract occurred in New York, the trial court does not err in holding that the law of New York controls the interpretation of the contract. Where a superior court sits in a civil matter, it may encourage and pursue pretrial resolution process other than the specific court-ordered mediation process pursuant to N.C. Gen. Stat. § 7A-38.1. Where a party invites alleged error, it may not then argue that error on appeal. Where both competent and incompetent evidence is before a trial court, the trial court is assumed to rely solely upon the competent evidence and to disregard any incompetent evidence. Where a party argues its substantive point in the trial court with full knowledge of an alleged ground for disqualification, it may not, upon losing on the merits, resort to a motion for recusal. Where a party willfully violates the stipulations it has agreed to as part of a settlement agreement process, thereby frustrating the orderly and efficient resolution of the dispute, the trial court does not err in imposing sanctions.

### Facts

General Railway Signal Company ("General Railway") was a New York corporation, founded in 1904, which manufactured railway signal equipment. In 1963, General Railway became a Delaware corporation and changed its named to General Signal Corporation ("GSX"). In 1976, GSX moved its corporate headquarters to Connecticut. In 1998, plaintiff SPX Corporation, ("SPX") acquired GSX and merged it into SPX in 2001.

Between the 1920s and 1980s, General Railway purportedly purchased and used various asbestos-containing parts and equipment in its manufacturing. As a result, General Railway has been implicated in approximately 151 asbestos bodily injury cases. There are thousands of additional asbestos bodily injury claims pending against the various other subsidiaries and predecessors of SPX. Defendant-appellant Employers Insurance Company of Wausau ("Wausau") insured General Railway under comprehensive general liability policies

between January 1950 and January 1963. Defendant-appellant Liberty Mutual Insurance Company ("Liberty") also provided liability policies to SPX. Defendants-appellees Ace Property & Casualty Company and Century Indemnity Company (collectively "Ace") provided insurance to SPX between 1967 and 1979. Defendant-appellant The Travelers Indemnity Company ("Travelers") is a Connecticut-based insurance company which issued seven one-year liability policies to GSX between April 1979 and April 1986.

Since 2003, Ace, Wausau, Travelers, Liberty and General Railway's other insurers have worked together under an informal claims handling agreement to pay 100% of the cost of defending and indemnifying each of General Railway's claims. SPX has been aware of this informal agreement and has tendered all asbestos bodily injury claims to lead carrier Ace in the expectation that ACE and the other carriers would implement the informal agreement.

However, on 13 June 2006, SPX commenced this declaratory judgment and breach of contract action, contending that it had the right to tender all of the claims to a single insurer and to demand that the chosen insurer pay 100% of the defense and indemnity costs. On 21 November 2006, the case was designated exceptional. On 21 May 2007, Century and ACE moved for summary judgment on the duty to defend and indemnify asbestos bodily injury claims against SPX. On 16 July 2007, SPX filed a cross-motion for summary judgment on ACE's duty to defend. On 14 August 2007, Wausau filed a joinder in ACE's motion for summary judgment. Following a hearing on 24 August 2007, the trial court entered an order on 6 March 2008 granting SPX's cross-motion for summary judgment and denying ACE's motion.

On 17 January 2008, Wausau moved for summary judgment on its duty to defend asbestos bodily injury claims brought against its insured, General Railway, a predecessor to SPX. On 5 March 2008, SPX filed a cross-motion for summary judgment against Wausau. Following a hearing on 7 May 2008, the trial court entered an order on 2 October 2008 granting SPX's cross-motion for summary judgment and denying Wausau's motion. On 15 August 2008, Liberty moved for partial summary judgment to establish that SPX was required to pay a specified deductible for each claim on each triggered Liberty policy; on 20 November 2008, the trial court granted that motion.

On 15 December 2008, Liberty and SPX participated in a mediation with Judge Spainhour serving as mediator. In preparation for the

mediation, counsel for Liberty and SPX executed a statement of various stipulations. The parties agreed, *inter alia*, that settlement conference memoranda were to be submitted confidentially and all offers and promises were inadmissible in any legal proceedings. After three days of mediation, SPX and Liberty believed they had reached a settlement agreement. Liberty's counsel understood the agreement to be conditional on the approval by Liberty's management of an annual cap on deductibles; SPX and its counsel apparently did not understand this contingency. The agreement was not reduced to writing, signed by the parties, or announced in open court. On 22 January 2009, Liberty informed SPX that its management would not approve the annual cap and, as a result, there was no agreement. At a 5 February 2009 status conference, SPX reported that Liberty had backed out of the settlement; Judge Spainhour stated that he believed representatives of Liberty had asserted they had authority to bind the company and approve the settlement. The trial court then entered a show cause order on that date, requiring Liberty to show cause why the settlement agreement should not be enforced and why the trial court should not order sanctions or other relief. Liberty sought reconsideration or vacation of the show cause order. The trial court denied these motions.

Following a 19 February 2009 hearing on the show cause order, on 13 March 2009, the trial court stated that it would order the settlement agreement be enforced and sanctioned Liberty by dismissing any defenses related to policy deductibles. On 5 March 2009, Liberty moved for reconsideration, arguing that the agreement was not enforceable because it was not reduced to writing or signed by all parties. At the close of a hearing on that motion, in which Judge Spainhour's role as a mediator in the attempted settlement process was debated, Liberty moved to disqualify Judge Spainhour for lack of impartiality based on his knowledge of confidential information at issue in the case which had been disclosed during the mediation. On 13 March 2009, the trial court entered a written order denying Liberty's motions for reconsideration and disqualification, enforcing the settlement agreement between SPX and Liberty, and sanctioning Liberty by dismissing any defenses related to policy deductibles and prohibiting Liberty from submitting any proof regarding deductibles in the matter as a result of Liberty's "improper negotiating conduct."

In March 2009, Travelers moved for partial summary judgment on the issue of proper allocation of defense costs for SPX's asbestos bodily injury claims. Travelers argued that Connecticut law applies to

the interpretation of its policies and that, under Connecticut law, Travelers is only required to pay a *pro rata* share of defense costs resulting from the asbestos bodily injury claims. In April of that year, SPX filed a cross-motion for summary judgment. By order of 26 May 2009, the trial court denied Travelers' motion for partial summary judgment and granted SPX's cross-motion for partial summary judgment.

On 20 October 2009, ACE filed a motion for summary judgment on Wausau's claim for contribution against other insurers of General Railway Signal Company, contending the method of allocation between insurers could be decided as a matter of law. Following a hearing on 18 November 2009, the trial court entered an order 6 January 2010 granting ACE's motion for summary judgment.

Also on 6 January 2010, the trial court entered a final judgment in the case. Defendant Wausau appeals from the 2 October 2008 and 6 January 2010 orders. Travelers appeals from the 26 May 2009 order. Liberty appeals from the 13 March 2009 order. SPX conditionally cross-appeals from the 20 November 2008 order granting partial summary judgment.

---

On appeal, Wausau argues the trial court erred by ruling that under New York law, an insurer (I) has a duty to pay 100% of defense costs associated with every underlying asbestos claim in which the complaint alleges bodily injury or disease that potentially occurred during the period when the insured provided coverage; and (II) is not entitled to a trial to determine the appropriate method for allocating defense and indemnity obligations using equitable principles. Travelers argues that the trial court erred in (III) holding that New York law, rather than Connecticut law, governs the application of its policies; and (IV) applying New York law to require that Travelers pay all of SPX's defense costs. Liberty brings forward five issues: the trial court erred in (V) enforcing an oral settlement reached; (VI) considering statements made at mediation to find that an oral settlement agreement was reached despite the stipulation that all evidence produced at the mediation would be inadmissible; (VII) using its own personal knowledge from *ex parte* communications to resolve a disputed factual issue; (VIII) refusing to recuse itself from resolving disputed factual issues about which the trial judge had personal knowledge; and (IX) imposing sanctions against Liberty. By a conditional cross-appeal, SPX argues that the trial court erred in (X) holding that Liberty Mutual was entitled to a full and separate per occurrence deductible for each claim covered by its policies.

SPX CORP. v. LIBERTY MUT. INS. CO.

[210 N.C. App. 562 (2011)]

*Wausau's Appeal*

*I*

**[1]** Wausau first argues that the trial court erred by ruling that under New York law,[1] an insurer has a duty to pay 100% of defense costs associated with every underlying asbestos claim in which the complaint alleges bodily injury or disease that potentially occurred during the period when the insurer provided coverage. We disagree.

We first address the proper standard of review on this issue. This Court reviews a trial court's order granting or denying summary judgment de novo. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). Issues of contract interpretation and an insurer's contractual duty to its insured are also reviewed de novo on appeal. *Kessler v. Shimp*, 181 N.C. App. 753, 756, 640 S.E.2d 822, 824 (2007). However, allocation issues regarding indemnity and defense costs are made by courts using equitable principles. *Maryland Cas. Co. v. W.R. Grace and Co.*, 218 F.3d 204, 210 (2nd Cir. 2000) (applying New York law). On appeal, a trial court's decision to grant equitable relief is reviewed for abuse of discretion. *Roberts v. Madison County Realtors Ass'n*, 344 N.C. 394, 401, 474 S.E.2d 783, 788 (1996). Thus, we believe an abuse of discretion standard is appropriate here.

In 2007, Ace and SPX filed cross-motions for summary judgment on the issue of whether an insurer is obligated to pay 100% of defense costs associated with an asbestos bodily injury claim. By order entered 6 March 2008, the trial court applied New York law to grant SPX's motion for summary judgment, and deny Ace's motion, holding that the insurers were required to pay 100% of any defense costs, but that, if any insurer was required to pay more than its fair share of defense costs, it could seek contribution from the other insurers. After the trial court ruled on the motions from SPX and Ace, Wausau and SPX filed cross-motions for summary judgment on the issue of Wausau's duty to defend. Wausau contended that there was no justiciable controversy because SPX had never tendered 100% of the defense cost of any claim to Wausau. In an order entered 2 October 2008, the trial court rejected Wausau's argument and granted SPX's motion based on the same reasoning it had applied in the 6 March 2008 order on the cross-motions by Ace and SPX.

---

1. Neither SPX nor Wausau disputes the trial court's conclusion that the law of New York applies to the underlying dispute.

New York caselaw provides that

> an insurer's duty to defend . . . is exceedingly broad. An insurer must defend whenever the four corners of the complaint suggest —or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage. The duty is broader than the insurer's obligation to indemnify: [t]hough policy coverage is often denominated as liability insurance, where the insurer has made promises to defend it is clear that [the coverage] is, in fact, litigation insurance as well.

*Cont'l Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 509 (1993) (internal quotation marks and citations omitted). In *Rapid-American Corp.*, the New York Court of Appeals noted that "the duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy, and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible." *Id.* at 514 (citations omitted). Based on this reasoning, the Court held that "[w]hen more than one policy is triggered by a claim, pro rata sharing of defense costs *may* be ordered, but *we perceive no error or unfairness in declining to order such sharing*, with the understanding that the insurer may later obtain contribution from other applicable policies." *Id.* (emphasis added). Thus, *Rapid-American Corp.* stands for the proposition that trial courts may either order that an individual insurer be required to pay 100% of any defense costs and later seek contribution from other applicable insurers, *or* order pro rata time-on-the-risk allocation of defense costs. *Id.*; *see also Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 694 (2002). In light of New York law, permitting either method of assigning and allocating defense costs, we see no abuse of discretion in the trial court's choice of method here. This argument is overruled.

In its motion for summary judgment, Wausau also contended that there was no justiciable controversy because SPX has never tendered a complete claim for defense costs to Wausau. We conclude that Wausau is judicially estopped from making this argument, having joined in and filed motions on both choice of law and the merits of the case in the trial court, eventually obtaining a 30 June 2008 ruling in its favor on the question of seeking contribution from other insurers for the cost of providing a defense for SPX.

**SPX CORP. v. LIBERTY MUT. INS. CO.**

[210 N.C. App. 562 (2011)]

Because

> the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, the Court enumerated three factors that typically inform the decision whether to apply the doctrine in a particular case. First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 28-29, 591 S.E.2d 870, 888-89 (2004) (internal citations and quotation marks omitted). Here, the first two factors are fulfilled because Wausau sought and received a ruling in the matter on its right to contribution which necessarily requires that there was a matter to resolve. Likewise, it would clearly disadvantage SPX if Wausau were permitted to receive beneficial rulings on the merits of this case, but SPX were not. This argument is overruled.

*II*

[2] Wausau also argues that the trial court erred in granting summary judgment and thereby denying Wausau a trial to determine the appropriate method for allocating defense obligations. We disagree.

We consider a trial court's ruling on a motion for summary judgment de novo on appeal. *Builders Mut. Ins. Co.*, 361 N.C. at 88, 637 S.E.2d at 530. We note that Wausau cites three cases to show that summary judgment was improper here because the particular allocation scheme to be employed is determined by the facts of the case. However, in each of the cases cited, the method of allocation was determined on motions; none used a trial to resolve the issue. Indeed, Wausau does not cite any case in which New York courts have decided the method of allocation following a trial. In fact, in one of the cases cited by Wausau, the New York Court of Appeals, the highest appellate court of that state, has approved the determination of

allocation scheme on summary judgment. In *Consol. Edison Co. of N.Y.*, the trial court granted summary judgment based on a lack of justiciability, applying a *pro rata* time-on-the-risk allocation. 774 N.E.2d at 689. The New York Court of Appeals approved the allocation by the trial court without a trial, although it noted "that this conclusion does not foreclose *pro rata* allocation among insurers by other methods either in determining justiciability or at the damages stage of a trial." *Id.* at 695. The holding and language of this opinion make clear that a variety of methods may be employed to decide the proper allocation method. The trial court here did not err in following this precedent in deciding allocation on a summary judgment motion. This argument is overruled.

*Travelers' Appeal*

*III*

[3] Travelers first argues that the trial court erred in holding that New York law, rather than Connecticut law, governs the application of its policies. We disagree.

We review appeals from rulings on motions for summary judgment de novo. *Builders Mut. Ins. Co.*, 361 N.C. at 88, 637 S.E.2d at 530. SPX and all of the other insurers concede that New York law applies to this case. However, Travelers' contends that Connecticut law applies because General Signal moved its corporate headquarters from New York to Connecticut in 1976, several years before Travelers began providing coverage to General Signal. Travelers further notes that it is headquartered in Connecticut.

"With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, *usually delivery of the policy*, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (emphasis added). Here, Travelers' policies were all delivered to and accepted by General Signal's designated insurance broker, J&H, which was located in New York City. J&H was employed by General Signal, not by the insurers, and was responsible for all insurance matters on behalf of General Signal, including determining necessary insurance levels and types; researching, soliciting and reviewing quotes; negotiating premiums; and receiving and accepting policies. Because receipt and acceptance of the policies, the last act to make a binding contract, occurred in New York, the law of that state controls the interpretation of the policies. This argument is overruled.

*IV*

**[4]** Travelers next argues that the trial court erred in applying New York law to require that Travelers pay 100% of SPX's defense costs. We disagree.

Having held *supra* that New York law applies in this matter, we reject Travelers' argument on this point for the reasons stated in our discussion of Wausau's appeal in issue I. In light of New York law, permitting either method of assigning and allocating defense costs, we see no abuse of discretion in the trial court's choice of method here. This argument is overruled.

*Liberty's Appeal*

*V*

**[5]** Liberty first argues that the trial court erred in enforcing an oral settlement agreement reached by the parties. We disagree.

Liberty contends that our general statutes preclude enforcement of a court-ordered mediated settlement unless it is reduced to writing and signed by the parties. *See* N.C. Gen. Stat. § 7A-38.1(l)(4) (2009) ("No settlement agreement to resolve any or all issues reached at the proceeding conducted under this subsection or during its recesses shall be enforceable unless it has been reduced to writing and signed by the parties."). It is undisputed that the settlement agreement here was neither reduced to writing nor signed by the parties. Thus, Liberty argues that, if the mediation between SPX and Liberty was governed by § 7A-38.1, the 13 March 2009 order enforcing it was error. On the other hand, SPX asserts that the parties merely engaged in a settlement conference conducted by the trial court within its inherent authority to manage the cases before it. *See, e.g.,* N.C. Gen. Stat. 1A-1, Rule 16(a) ("[T]he judge may in his discretion direct the attorneys for the parties to appear before him for a conference to consider . . . [s]uch other matters as may aid in the disposition of the action."). "Questions regarding statutory interpretation are reviewed *de novo* under an error of law standard." *Price & Price Mech. of N.C., Inc. v. Miken Corp.,* 191 N.C. App. 177, 179, 661 S.E.2d 775, 777 (2008).

Section 7A-38.1 applies only to "a pretrial, court-ordered conference of the parties to a civil action and their representatives conducted by a mediator." N.C.G.S. § 7A-38.1(b)(1). Further, subsection (e) specifies which cases fall under the purview of the statute:

(e) Cases selected for mediated settlement conferences.—The senior resident superior court judge of any participating district may

order a mediated settlement conference for any superior court civil action pending in the district. The senior resident superior court judge may by local rule order all cases, not otherwise exempted by the Supreme Court rule, to mediated settlement conference.

N.C.G.S. § 7A-38.1(e). The record here contains no such order entered by the senior superior court judge of the twenty-sixth judicial district. Further, this statute goes on to make clear that the process authorized by its terms is only one possible route by which a trial court and parties may pursue pretrial resolution:

> (i) Promotion of other settlement procedures.—Nothing in this section is intended to preclude the use of other dispute resolution methods within the superior court. Parties to a superior court civil action are encouraged to select other available dispute resolution methods. The senior resident superior court judge, at the request of and with the consent of the parties, may order the parties to attend and participate in any other settlement procedure authorized by rules of the Supreme Court or by the local superior court rules, in lieu of attending a mediated settlement conference. Neutral third parties acting pursuant to this section shall be selected and compensated in accordance with such rules or pursuant to agreement of the parties. Nothing in this section shall prohibit the parties from participating in, or the court from ordering, other dispute resolution procedures, including arbitration to the extent authorized under State or federal law.

N.C.G.S. § 7A-38.1(i). Liberty notes numerous instances in which it, SPX, and the trial court referred to the process engaged in as a "court-ordered mediation," but we note that a slip of the tongue or misnomer cannot overcome statutory requirements and transform a settlement conference into a court-ordered mediation under § 7A-38.1. This argument is overruled.

*VI*

**[6]** Liberty next argues that the trial court erred in considering statements made at mediation to find that an oral settlement agreement was reached despite the stipulation that all evidence produced at the mediation would be inadmissible. We disagree.

Liberty contends that, if the settlement discussion conducted between the parties was not governed by N.C.G.S. § 7A-38.1, then it was governed by the stipulations entered into by the parties. Those stipulations included provisions that "the entire settlement confer-

ence [is to] be confidential" and that all "offers" and "promises" would be "inadmissible for any purposes in any legal proceeding." Thus, Liberty asserts that these stipulations should have prevented the trial court from considering the discussions that occurred during the set-tlement process in determining whether an oral agreement was actu-ally reached. We review alleged errors of law de novo. *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

Here, the record reveals that Liberty made no such arguments before the trial court, and, in fact, compelled the trial court to con-sider the very evidence it now objects to. At the hearing on the show cause order, Liberty presented affidavits and called witnesses to testify about what occurred during the settlement conference. We believe this is a clear instance of invited error.

Invited error has been defined as

> "a legal error that is not a cause for complaint because the error occurred through the fault of the party now complain-ing." The evidentiary scholars have provided similar defini-tions; e.g., "the party who induces an error can't take advantage of it on appeal", or more colloquially, "you can't complain about a result you caused."

> 21 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5039.2, at 841 (2d ed. 2005) (footnotes omitted); *see also Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994) ("A party may not complain of action which he induced." (citations omitted)).

*Boykin v. Wilson Med. Ctr.*, —— N.C. App. ——, ——, 686 S.E.2d 913, 916 (2009), *disc. review denied*, 363 N.C. 853, S.E.2d (2010). Liberty, having presented the trial court with evidence about what was said and done at the settlement conference, may not now be heard to com-plain that the trial court considered that very evidence. This argument is overruled.

## VII

**[7]** Liberty also argues that the trial court erred in using its own per-sonal knowledge from *ex parte* communications to resolve a disputed factual issue. We disagree.

Liberty complains that the trial court resolved a disputed factual issue, namely whether Liberty informed Judge Spainhour or SPX that the settlement agreement was contingent upon approval by Liberty's management, based upon his own personal knowledge. Liberty

asserts that there is no authority for a trial court to rely on personal knowledge to resolve such issues and that doing so violates Canon 3(C) of the Code of Judicial Conduct (requiring that judges disqualify themselves if they have "personal knowledge of disputed evidentiary facts concerning the proceedings"). Contentions of errors of law by the trial court are reviewed de novo on appeal. *Falk Integrated Tech., Inc.*, 132 N.C. App. at 809, 513 S.E.2d at 574.

The 13 March 2009 order states that it is based on "the parties' briefs, the affidavits of record, the testimony of witnesses, and the arguments of counsel." As is well-established, "[w]here both competent and incompetent evidence is before the trial court, we assume that the trial court, when functioning as the finder of facts, relied solely upon the competent evidence and disregarded the incompetent evidence." *In re Cooke*, 37 N.C. App. 575, 579, 246 S.E.2d 801, 804 (1978); *see also In re Foreclosure of Brown*, 156 N.C. App. 477, 487, 577 S.E.2d 398, 405 (2003). This argument is overruled.

## VIII

**[8]** Liberty also argues the trial court erred in refusing to recuse himself from resolving disputed factual issues about which he had personal knowledge. We disagree.

The denial of a motion for recusal is reviewed for abuse of discretion. *Roper v. Thomas*, 60 N.C. App. 64, 76, 298 S.E.2d 424, 431 (1982). On this issue, Liberty's brief merely states that it relies on its argument in issue VII, *supra*. Having overruled that argument, we likewise do so here. Further, we hold that a party may not argue its substantive point in the trial court with full knowledge of the alleged ground for disqualification, and then, upon losing on the merits, resort to a motion for recusal. *See Ex parte Steele*, 220 N.C. 685, 689, 18 S.E.2d 132, 135 (1942) (stating that "a failure to raise objection at the trial, when the party complaining had full knowledge of the existence of the disqualification, constitutes a waiver and estops him from thereafter urging the point as a defect in the proceeding.").

## IX

**[9]** Finally, Liberty argues the trial court erred in imposing sanctions against Liberty. We disagree.

The trial court cited *Lomax v. Shaw*, 101 N.C. App. 560, 563, 400 S.E.2d 97, 98 (1991), in imposing sanctions on Liberty for inappropriate negotiating conduct. In that case, we considered an appeal where the

**SPX CORP. v. LIBERTY MUT. INS. CO.**

[210 N.C. App. 562 (2011)]

trial court struck a portion of the defendant's answer as a sanction for its refusal to execute a consent order. We held that the

> Superior Court judge was well within the bounds of the court's inherent authority to manage the case docket when he struck the defendants' answer. . . . In order to maintain an efficient and orderly system for calendaring and hearing cases in an increasingly congested justice system, the court must have inherent authority to impose sanctions for willful failure to comply with the applicable rules, no less local than statewide.

*Id.*

Here, the trial court noted that the stipulations executed prior to the settlement conference required the physical attendance of party representatives having the authority to settle the dispute or who could "promptly communicate during the conference with person having the decision-making authority to settle the action." Liberty violated this requirement because it did not ensure that those of its representatives present at the settlement conference were able to authorize a final settlement. Liberty agreed to the stipulations and yet now argues on appeal that its representatives were only able to make a contingent settlement offer. This willful violation of the very terms Liberty stipulated to has resulted in the exact harm warned of in *Lomax*; namely, frustration of the orderly and efficient resolution of the dispute between these parties and the resulting additional hearings, orders, and other proceedings. We see no error in the trial court's imposition of sanctions. This argument is overruled.

## X

[10] In a conditional cross-appeal, SPX argues that the trial court erred in holding that Liberty Mutual was entitled to a full and separate per occurrence deductible for each claim covered by its policies. SPX contends that, in the event we were to vacate or reverse the trial court's 13 March 2009 order sanctioning Liberty by striking its deductibility defense, we should review the trial court's 20 November 2008 order granting partial summary judgment to Liberty regarding the deductibles. However, because we have affirmed the trial court's 13 March 2009 order (*see* issue IX, *supra*), we need not consider SPX's cross-appeal.

Affirmed.

Judges McGEE and BEASLEY concur.