STEPHEN D. McCULLOUGH, Plaintiff v. BRANCH BANKING & TRUST CO., INC., Defendant

No. COA99-149

(Filed 18 January 2000)

## 1. Disabilities— Equal Employment Practices Act—definition of handicap—alcoholism

The trial court did not err in an employment termination case by instructing the jury that the term "handicapped" has been defined to exclude active alcoholism or in its definition of active alcoholism. Reading other statutes relating to the same subject with the Equal Employment Practices Act, N.C.G.S. § 143-422.2, "handicap" as used in the Act includes alcoholism but not active alcoholism and, using the common and ordinary meaning, an "active alcoholic" is an alcoholic who is currently engaged in the use of alcohol or was in the immediate past.

## 2. Employer and Employee— bonus—termination

The trial court did not err in an action arising from an employment termination by denying plaintiff's request for instructions regarding plaintiff's claim for an unpaid wage bonus. Although there was no notification to plaintiff that termination of his employment could result in forfeiture of his bonus, the decision to require forfeiture of the bonus did not constitute a change in the benefits plan and no notice was required.

McCULLOUGH v. BRANCH BANKING & TR. CO.

[136 N.C. App. 340 (2000)]

**3. Venue— change—convenience of witnesses—motion after answer**

The trial court did not err by considering a motion for change of venue filed after the answer where the motion was based on the convenience of the witnesses.

Appeal by plaintiff from order allowing defendant's motion for change of venue filed 15 July 1994 by Judge Narley L. Cashwell in Wake County Superior Court, from oral order from the bench on 5 September 1997 denying plaintiff's motion for a directed verdict, from order denying plaintiff's motion for a new trial filed 18 December 1997, from order allowing defendant's motion for costs filed 18 December 1997, from order denying plaintiff's first and second motions to compel defendant to pay plaintiff's expert reasonable fee for traveling to and from his deposition filed 18 December 1997, and from jury instructions given at trial, by Judge G.K. Butterfield, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 16 November 1999.

*Robert J. Willis, for plaintiff-appellant.*

*Constangy, Brooks & Smith, LLC, by Edward Katze and Timothy R. Newton, and Narron & Holdford, P.A., by I. Joe Ivey, for defendant-appellee.*

GREENE, Judge.

Stephen D. McCullough (Plaintiff) appeals a jury verdict and final judgment in favor of Branch Banking & Trust Company, Inc. (Defendant) finding Defendant did not wrongfully terminate the employment of Plaintiff and Defendant did not fail to pay Plaintiff a wage bonus established for the work of Plaintiff and other employees of Defendant. Plaintiff also appeals a 15 July 1994 order transferring venue from Wake County to Wilson County and an 18 December 1997 order denying him a new trial.

*Wrongful Termination Claim*

The evidence reveals Plaintiff was hired by Defendant in June 1986 with an agreement that either party could terminate the relationship "for any reason, whenever either chooses to do so." Although none of his co-workers observed him under the influence of alcohol while at work throughout his employment with Defendant, Plaintiff regularly abused alcohol, frequently used marijuana, occasionally

McCULLOUGH v. BRANCH BANKING & TR. CO.

[136 N.C. App. 340 (2000)]

arrived at work with a hangover, and had trouble getting to work on time. Plaintiff testified, however, that his substance abuse did not interfere with his job performance. In 1986 and 1987, Plaintiff was charged with public intoxication twice and was arrested and charged three times for Driving While Impaired (DWI) in Wake, Durham, and Wilson Counties. The Wilson County DWI arrest, on 4 December 1987, also resulted in Plaintiff being arrested for Driving While License Revoked.

Defendant learned of the Wilson County arrest through a newspaper article in The Wilson Daily Times. Consequently, Plaintiff was counseled by his supervisor Rodney Hughes (Hughes) and told Defendant's medical plan would pay expenses for counseling and rehabilitation, leave would be available for rehabilitation, to seek help now while he recognized his problem, and Defendant would help him overcome his problem. Hughes stressed that Defendant would not tolerate a future occurrence of Plaintiff's alcohol related problems, and if another occurred, Plaintiff would be terminated.

Plaintiff was ultimately convicted of DWI for both the Durham and Wilson County arrests. His driver's license was permanently revoked, and he had to serve seven days in jail. Plaintiff concealed his jail term and his other arrests, and Defendant did not learn of Plaintiff's jail term or his driver's license permanent revocation until Plaintiff's termination.

On 20 October 1990, Plaintiff was arrested for DWI and Driving While License Permanently Revoked in Wake Forest, North Carolina. Plaintiff gave the arresting officer Horace Macon (Macon) a Florida driver's license, because he was permanently banned from driving in this State. In connection with these charges, Plaintiff appeared for a hearing at the Department of Motor Vehicles (DMV) in February 1991. Plaintiff told the DMV hearing officer he lived at a Florida address, and his attorney told the DMV hearing officer Plaintiff had been living in Florida for the past three years and was in North Carolina visiting his girlfriend.

As a result of these events, Macon, who was present at the DMV hearing, contacted Billy Montague (Montague), then Human Resources Director for Defendant, to verify Plaintiff's employment in North Carolina. During this conversation, Macon told Montague what had transpired at the DMV hearing. Following his conversation with Macon, Montague contacted Hughes and Hughes' superior Scott Reed (Reed) and conducted his own investigation into Plaintiff's criminal

record. This investigation uncovered Plaintiff's DWI arrests and his driver's license permanent revocation. Montague was concerned about Plaintiff's trustworthiness and whether the surety bond required by law on all bank employees would terminate for Plaintiff, because the bond under which Plaintiff was covered would terminate as to any employee whenever the bank "learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the insured or otherwise . . . ."

On 12 March 1991, Defendant notified Plaintiff he was terminated effective 13 March 1991. Plaintiff filed this action in November of 1993 alleging Defendant wrongfully discharged him on the basis of his handicap, his alcoholism, in violation of the public policy of North Carolina as set forth in N.C. Gen. Stat. 143-422.2.

Over Plaintiff's objection, the trial court instructed the jury, concerning Plaintiff's wrongful termination claim in pertinent part that:

> [D]efendant was not entitled to terminate [P]laintiff if to do so violated public policy. A public policy violation would occur if a person is terminated from employment substantially because of a qualifying handicap when the person is capable of performing the essential functions of the job, with or without reasonable accommodation.
>
> In order to prevail on this First Issue, []the [P]laintiff must prove . . . the following three things:[] . . . .
>
> First, that the [P]laintiff was handicapped by reason of being an alcohol dependent person.
>
> Now, ladies and gentlemen, the term "handicapped" is defined to mean any person who has a physical or mental impairment which substantially limits one or more major life activities.
>
> []The term "physical or mental impairment" has been defined to exclude active alcoholism, or drug addiction, or both.[] . . . .

Following the previous instruction, Plaintiff requested and the trial court rejected the following instruction to the jury. " 'Physical or mental behavior that is directly caused by or a direct manifestation of a particular physical or mental impairment should be considered to be a part of that handicap.' "

Over Plaintiff's objection, the trial court further instructed the jury in pertinent part:

[]In making the determination as to whether the [P]laintiff was handicapped, I instruct you that the handicap law expressly excludes individuals who are active alcoholics. Thus, a person who is an active alcoholic is not handicapped under North Carolina law.

Now, you may evaluate a variety of factors in determining whether [P]laintiff was an active alcoholic at the time of his termination . . . .

I instruct you, however, that if the evidence presented shows that the [P]laintiff, given his admission of alcohol[ism], was using alcohol at the time of his termination, you may find that the [P]laintiff was an active alcoholic.

The term "using alcohol" is not intended to be limited to the use of alcohol within a matter of days or weeks before the [P]laintiff's discharge. Rather, the terms appl[y] to the use of alcohol that has occurred recently enough to indicate that an individual is actively engaged in the use of alcohol. Or, the use of alcohol is an ongoing problem.[]

An alcoholic employee who is using alcohol in a periodic fashion during the weeks and months prior to his termination is an active alcoholic.[]

### Wage Bonus Claim

In 1990, Plaintiff convinced Defendant to start an incentive program for the overnight funding function he and two other employees operated for Defendant. In 1990, Plaintiff was paid his bonus at the end of the 1990 plan year after 28 November 1990. At the end of the 1990 plan year, Hughes advised Plaintiff the 1990 incentive compensation plan for the overnight funding would be renewed for the 1991 plan year. The 1991 plan year began on 29 November 1990. Hughes advised Plaintiff the standard or method for calculating the amount and share of the bonus Plaintiff would divide with his team would remain the same as in 1990.

Plaintiff was not advised his right to receive this 1991 incentive compensation was subject to forfeiture on any grounds or conditioned on his tenure with Defendant, however, he testified Hughes "hadn't decided what to do [about the paying of the bonus] if

somebody leaves" before the end of the plan year. Plaintiff's employment with Defendant was terminated 13 March 1991, and he did not receive a bonus for the 1991 plan year. Plaintiff's complaint seeks payment of the unpaid wage bonus from Defendant under N.C. Gen. Stat. 95-25.22.

The trial court instructed the jury in pertinent part as follows:

The Fifth Issue in this case reads as follows:

"Did [D]efendant fail to pay the [P]laintiff a wage bonus established for the work of the [P]laintiff and other employees from November 28, 1990 to March 1, 1991?"

On this Fifth Issue, the burden of proof is on the [P]laintiff. The [P]laintiff must prove, by the greater weight of the evidence, that [he] was entitled to a wage bonus at the time of his termination from employment.

Whether [P]laintiff was entitled to a bonus at the time of his termination depends upon the terms of the [D]efendant's bonus plan which existed at the time of the [P]laintiff's termination. . . .

If you find that under the [D]efendant's bonus plan, the [P]laintiff was entitled to a bonus at the time of his termination, you must answer this Fifth Issue "yes" in favor of the [P]laintiff.

If, on the other hand, you fail to so find, then you will answer the Fifth Issue "no" in favor of the [D]efendant.

Plaintiff requested and the trial court rejected the following instruction to the jury regarding Plaintiff's wage bonus claim.

"Under North Carolina law, the terms of the Defendant's bonus plan which existed at the time of the Plaintiff's termination do not include terms which provided for the loss or forfeiture of that bonus if certain events did or did not occur unless those terms were disclosed to the Plaintiff in writing by either providing him with a copy of those terms before the Plaintiff earned any part of that bonus or by [posting] those terms in a place accessible to the Plaintiff."

*Change of Venue*

After filing its answer, Defendant filed a motion to change venue, pursuant to section 1-83(2), based on the convenience of the wit-

nesses. In support of the motion, Defendant submitted an affidavit showing that all of the acts complained of occurred in Wilson County and the managers of Defendant and most of the witnesses lived in Wilson County. The trial court allowed the motion and transferred the case from Wake County to Wilson County.

It should noted that Plaintiff's assignments of error numbers 1, 4, 6, 10, 13 and 16 are deemed abandoned, because they are not presented and discussed in Plaintiff's brief. N.C.R. App. P 28(a).

---

The issues are whether: (I) the definition of a "handicapped person" given in section 168A-3(4) is properly used to determine the legislative intent of a "handicap" within the meaning of section 143-422.2; if so, (II) the jury instructions given by the trial court are consistent with the section 168A-3(4) definition; (III) the trial court erred in instructing the jury concerning Plaintiff's wage bonus claim; and (IV) the trial court erred in hearing and allowing Defendant's motion for change of venue.

### Wrongful Termination

At-will employees may be terminated for no reason or for arbitrary or irrational reasons, but they may not be terminated for an " 'unlawful reason or purpose that contravenes public policy.' " *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (citation omitted). The State's "public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

Plaintiff, acknowledging he is an at-will employee, argues his termination of employment was in violation of this State's public policy prohibiting discrimination on account of a person's handicap or disability. Plaintiff specifically contends his termination was in consequence of his alcoholism[1] and alcoholism qualifies as a handicap within the meaning of section 143-422.2.

### I

[1] The Equal Employment Practices Act of North Carolina (the Employment Act) provides in pertinent part:

---

1. There is no dispute among the parties that Plaintiff is an alcoholic.

**McCULLOUGH v. BRANCH BANKING & TR. CO.**

[136 N.C. App. 340 (2000)]

"It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . handicap . . . ."

N.C.G.S. § 143-422.2 (1999). The Employment Act does not define "handicap" and therein lies the basis for the dispute in this case. Plaintiff points to the federal Vocational Rehabilitation Act (Rehabilitation Act) which excludes from its definition of an "individual with a disability" alcoholics "whose current use of alcohol prevents such individual from performing the duties of the job in question." 29 U.S.C. § 706 (8)(C)(v) (1994). Defendant directs our attention to the North Carolina Handicapped Persons Protection Act (Handicapped Act) which specifically excludes "active alcoholism" from the definition of a handicapped person. N.C.G.S. § 168A-3(4)(a)(iii)(B) (1995).[2]

In determining our legislature's intent of the meaning of "handicap" as used in the Employment Act, it is appropriate to consider other North Carolina statutes which relate to the same subject matter, although enacted at different times. *Carver v. Carver*, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). If related to the same subject matter, the statutes "must be construed together in order to ascertain [the] legislative intent." *Id.*[3]

The Employment Act, enacted in 1977, protects the rights and opportunities of persons to "seek, obtain and hold employment without discrimination or abridgement on account of . . . handicap." N.C.G.S. § 143-422.2. The Handicapped Act, enacted in 1985, encourages all handicapped persons "to engage in remunerative employment" and finds that "the practice of discrimination based upon a handicapping condition is contrary to the public interest and to the principles of freedom and equality of opportunity." N.C.G.S. § 168A-2 (1995).[4] These statutes, although enacted at different times,

---

2. Effective 1 October 1999, subsections (4) and (5) of section 168-3 were recodified as subsections (7a) and (1), respectively, and the terms "[p]erson with a disability" and "disabling condition" were substituted for "handicapped person" and "handicapping condition," respectively.

3. In so holding, we reject Plaintiff's argument that our construction of the word "handicap" within the meaning of section 143-422.2 should be controlled or guided by the Rehabilitation Act.

4. Effective 1 October 1999, the terms "persons with disabilities" was substituted for "handicapped people" and "disabling" was substituted for "handicapping" for actions filed on or after that date under section 168A-1 through 168A-12.

relate to the same subject matter, employment discrimination against handicapped persons, and, thus, must be construed together to ascertain legislative intent.[5] Reading these statutes *in pari materia,* "handicap" as used in the Employment Act includes alcoholism but not "active alcoholism."[6] The trial court, thus, correctly instructed the jury that "the term 'handicapped' . . . has been defined to exclude active alcoholism."[7]

## II

"Active alcoholism" is not defined in the Handicapped Act or any other North Carolina statute. Having no statutory definition, not having acquired a technical meaning, and a different meaning not being apparent from the statute, the phrase "active alcoholism" must be construed in accordance with its common and ordinary meaning, *Supply Co. v. Motor Lodge,* 277 N.C. 312, 319, 177 S.E.2d 392, 396 (1970), which can be gained from dictionaries, *State v. Martin,* 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970). Dictionaries define "active" to include "[e]ngaged in activity; participating," *American Heritage College Dictionary* 13 (3d ed. 1997), and "alcoholism" is defined as "a dependence on alcohol" and "a chronic disease . . . caused by the excessive and habitual consumption of alcohol," *id.* at 32. Thus, an "active alcoholic" is an alcoholic who is currently engaged in the use of alcohol or was in the immediate past engaged in the use of alcohol.

In this case, the trial court instructed the jury that an "active alcoholic" employee is an alcoholic who was "using alcohol in a periodic fashion during the weeks and months prior to his termination." This

---

5. Additionally, "[w]here . . . one statute deals with a particular situation in detail, while another statute deals with it in general and comprehensive terms, the particular statute will be construed as controlling absent a clear legislative intent to the contrary." *Merrit v. Edwards Ridge,* 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988); *see also* 82 C.J.S. *Statutes* § 369, at 839 (1953). Because the Handicapped Act specifically provides that "active alcoholics" are excluded from the definition of "handicapped people," that Act controls over the general language of the Employment Act.

6. "Handicapped person" is defined in the Handicapped Act to mean "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C.G.S. § 168A-3(4). Physical and mental impairment is defined to exclude "active alcoholism." *Id.*

7. The trial court also did not err in refusing to give the instructions requested by Plaintiff on this issue, as they were not "correct in law." *State v. Thompson,* 118 N.C. App. 33, 36, 454 S.E.2d 271, 273, *disc. review denied,* 340 N.C. 262, 456 S.E.2d 837 (1995).

instruction is sufficiently consistent with the definition of "active alcoholism" herein approved and, therefore, does not constitute error. *See Barnard v. Rowland,* 132 N.C. App. 416, 427, 512 S.E.2d 458, 466 (1999) (trial court must instruct on the law of the case).

*Wage Bonus Claim*

III

[2] North Carolina's Wage and Hour Act, section 95-25.13, provides in pertinent part:

Every employer shall:

. . . .

(3) Notify its employees, in writing or through a posted notice maintained in a place accessible to its employees, of <u>any changes</u> in promised wages prior to the time of such changes except that wages may be retroactively increased without the prior notice required by this subsection . . . .

N.C.G.S. § 95-25.13(3) (1999) (emphasis added). We have construed this statute to permit an employer to make changes in an employee's benefits, but the change applies only to those benefits accruing after written notice is given the employee or notice is posted in a place accessible to the employees. *Narron v. Hardee's Food Systems, Inc.,* 75 N.C. App. 579, 583, 331 S.E.2d 205, 207-08, *disc. review denied,* 314 N.C. 542, 335 S.E.2d 316 (1985), *overruled on other grounds by J&B Slurry Seal Co. v. Mid-South Aviation, Inc.,* 88 N.C. App. 1, 362 S.E.2d 812 (1987). Employees who have not been properly notified of changes in their benefits "are not subject to loss or forfeiture" of those benefits. N.C.G.S. § 95-25.7 (1999).

Plaintiff argues the trial court erred in its jury instructions because it failed to inform the jury Plaintiff was entitled to receive his bonus unless he was notified of the forfeiture provisions prior to the accrual of the bonus. Defendant argues forfeiture notification under section 95-25.13 is required only when there occurs a change in an employee benefit. In this case, Defendant contends, no change occurred in Plaintiff's bonus plan because an employee's entitlement to the bonus had not been determined if their employment ceased before the end of the plan year.

The evidence in this record provides details of how the bonus would be computed in a plan year. There is no evidence, however, on

the issue of entitlement to the bonus if employment was terminated before the expiration of the plan year. Plaintiff's employment was terminated before the end of the plan year and Defendant refused to pay any bonus. Although there was no notification to Plaintiff that termination of his employment could result in forfeiture of his bonus, the decision to require forfeiture of the bonus did not constitute a change in the plan, therefore, no notice was required. Accordingly, the trial court did not err in denying Plaintiff's request for instructions.

### Change of Venue

### IV

[3] Plaintiff finally argues the trial court erred in allowing Defendant's motion for change of venue because the motion was filed after the answer was filed. Although motions for change of venue based on improper venue, pursuant to section 1A-1, Rule 12(b)(3), must be filed prior to or with the answer, motions for change of venue based on the convenience of witnesses, pursuant to section 1-83(2), must be filed after the answer is filed. *Construction Co. v. McDaniel*, 40 N.C. App. 605, 607, 253 S.E.2d 359, 360 (1979). Defendant's motion in this case was based on the convenience of the witnesses and, thus, was properly filed. The trial court, therefore, did not err as a matter of law in considering the motion and Plaintiff has shown no abuse of discretion in the trial court's decision to allow the motion. *Id.*

We have carefully reviewed Plaintiff's other assignments of error and arguments and determine them to be unpersuasive.

Affirmed.

Judges WALKER and TIMMONS-GOODSON concur.