MICHAEL TOPP; DUNCAN THOMASSON; MARTIN KOOYMAN AND BLACK PEARL ENTERPRISES, LLC, PLAINTIFFS v. BIG ROCK FOUNDATION, INC.; CRYSTAL COAST TOURNAMENT, INC.; CARNIVORE CHARTERS, LLC; EDWARD PETRILLI; JAMIE WILLIAMS; TONY R. ROSS AND JOHN DOE, DEFENDANTS

No. COA11-681

(Filed 5 June 2012)

**1. Venue—change of venue—right to request change not waived—no abuse of discretion**

The trial court did not err in a breach of contract case arising out of a fishing tournament by granting defendants' motion to change venue. Defendants did not implicitly waive their right to request a change of venue due to their participation in the litigation prior to filing their motion and the trial court did not abuse its discretion in granting the motion.

**TOPP v. BIG ROCK FOUND.**

[221 N.C. App. 64 (2012)]

2. **Contracts—breach of contract—decision of tournament rules committee—appropriate test—decision not arbitrary—due process**

The trial court did not err in a breach of contract case by granting defendants' motion for summary judgment. The trial court did not err in applying a test requiring evidence of fraud, bad faith, or arbitrariness to overturn the decision of the tournament rules committee and the board of directors and the Court of Appeals adopted the test. Further, plaintiffs presented no evidence that the board's decision was arbitrary or manifestly unreasonable or that the board did not afford plaintiffs procedural due process.

3. **Judges—recusal—moot**

Plaintiffs' argument in a breach of contract case that the trial judge committed reversible error in denying their motion to recuse was moot as plaintiffs had the benefit of a *de novo* review of the summary judgment issue in which the Court of Appeals substituted its opinion for that of the trial judge.

Appeal by Plaintiffs from orders entered 27 August 2010 by Judge J. Carlton Cole in Dare County Superior Court and 14 March 2011 by Judge John E. Nobles, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 16 November 2011.

*Gay, Jackson & McNally, L.L.P., by Andy W. Gay and Darren G. Jackson, for Plaintiffs-appellants.*

*Ward and Smith P.A., by E. Bradley Evans, for Defendants-appellees Big Rock Foundation, Inc. and Crystal Coast Tournament, Inc.*

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, III and Chadwick I. McCullen, for Defendants-appellees Carnivore Charters, LLC, Edward Petrilli, Jamie Williams, and Tony R. Ross.*

HUNTER, JR., Robert N., Judge.

Michael Topp, Duncan Thomasson, Martin Kooyman, and Black Pearl Enterprises, LLC ("Plaintiffs") appeal from the trial courts' orders relating to Plaintiffs' breach of contract claim against Big Rock Foundation, Inc. ("Big Rock Foundation"), Crystal Coast Tournament, Inc. ("Crystal Coast Tournament"), and John Doe.

Plaintiffs argue Judge J. Carlton Cole erred in granting the motion to change venue filed by Big Rock Foundation, Crystal Coast Tournament, and John Doe. Plaintiffs additionally argue Judge John E. Nobles, Jr. erred by denying Plaintiffs' motion to recuse himself from consideration of the proceedings; by denying Plaintiffs' motion to strike affidavits filed by Big Rock Foundation and Crystal Coast Tournament in support of their motion for summary judgment; and by granting summary judgment in favor of Big Rock Foundation, Crystal Coast Tournament, Carnivore Charters, LLC, Edward Petrilli, Jamie Williams, Tony R. Ross, and John Doe ("Defendants"). For the following reasons, we affirm.

## I. Facts & Procedural Background

Plaintiffs were contestants in the 2010 Big Rock Blue Marlin Tournament (the "Tournament"), a saltwater fishing tournament operated by defendant Crystal Coast Tournament. On 14 June 2010, the first fishing day of the Tournament, Plaintiffs' boat, the Citation, departed Hatteras at approximately 6:30 a.m. for the Tournament fishing grounds. On board the Citation were Captain Eric Holmes, First Mate Peter Wann, Martin Kooyman, Duncan Thomasson, and Michael Topp.[1]

As the Citation was underway and inside the three-mile boundary defining state territorial waters, Wann began preparing bait and rigging equipment to be used for the day's fishing. The Tournament rules prohibited any lines or teasers to be placed in the water before 9:00 a.m.; by that time Plaintiffs had travelled out of state waters and into the Exclusive Economic Zone ("EEZ").[2] At approximately 10:30 a.m., Plaintiffs hooked an 883-pound blue marlin. Plaintiffs received permission from the Tournament Rules Committee to hand-line the fish. After several hours, Plaintiffs were able to haul the marlin on board the boat at approximately 3:15 p.m. The boat was approximately 25 miles off the North Carolina coast, in the EEZ, at the time the fish was hooked and when it was hauled on board the Citation.

---

1. At the time Plaintiffs filed their complaint, Martin Kooyman, Duncan Thomasson, and Michael Topp were the managing members of Black Pearl Enterprises, LLC, which owned the Citation.

2. The Exclusive Economic Zone is the area running three nautical miles to 200 nautical miles from shore. 16 U.S.C. § 5102(6). These 'federal waters' are, in general, regulated by the U.S. government under the Magnuson [Fishery Conservation and Management] Act. The area from the shore out to three nautical miles is generally regulated by the states[.]" *N.C. Fisheries Ass'n, Inc. v. Brown*, 917 F. Supp. 1108, 1115 n.15 (E.D. Va. 1996).

After securing the marlin on the boat, the Citation headed back to the Tournament weigh station in Morehead City. En route, Wann realized he and the others aboard the Citation were likely to be subjected to questioning when they made it ashore, so he reviewed the Tournament rules. Rule 9 of the Tournament rules states that all boats "must" have a highly migratory species fishing permit ("HMS permit") on board the boat when engaged in fishing. Rule 9 further provides that "[t]he North Carolina Division of Marine Fisheries will require a recreational fishing license for anyone participating in fishing aboard a vessel. This includes a license for the captain, the mate and the anglers." The rules further state that at least one person on each team is responsible for knowing the rules, including any changes announced at the Captain's Meeting. At the Captain's Meeting before the Tournament began, the need for a North Carolina Costal Recreational Fishing License ("CRFL") was emphasized, and the captains were warned not to risk losing one million dollars because of the lack of a license.

After reading the Tournament rules, Wann asked Captain Holmes if they possessed a blanket fishing license on the boat; Holmes replied they did not. Concerned that he did not possess a valid CRFL, Wann used a laptop computer to check the status of his license via the internet. However, he could not conclusively determine whether he had an active license. Thinking that "two licenses would be better than none," Wann used the laptop to obtain a license; the transaction was effective at 5:51 p.m. Plaintiffs brought their catch to the weigh station, where it was accepted as the first catch of the Tournament weighing over 500 pounds.

Upon conclusion of the Tournament, Plaintiffs appeared to be entitled to a first place prize of $910,062.50; Defendants' vessels, Carnivore and Wet-N-Wild, qualified for second and third place, respectively, with a 528-pound marlin and a 460-pound marlin. Before awarding the prize money, Crystal Coast Tournament learned that Wann had been fishing without a CRFL on the day the Citation caught the 883-pound marlin. On 19 June 2010, Captain Holmes and Wann were required to take polygraph tests pursuant to Tournament rule 17. When Holmes was asked if he knew of any reason why the Citation and its catch should be disqualified, he mentioned the possibility that Wann did not possess a CRFL when the marlin was caught. When Wann was subjected to a polygraph test, he was asked three times whether he had an active CRFL when he landed the marlin on the Citation; on the third time he was asked, he answered " 'No.' "

At the request of the Citation owners, Wann reported to the North Carolina Marine Fisheries Commission ("MFC"). Wann admitted to the MFC that after leaving the dock at approximately 6:30 a.m. on 14 June 2010, while the Citation was in state waters, he prepped for the day's fishing by thawing bait, rigging bait, and coiling leaders. The MFC issued Wann a citation for engaging in recreational fishing at 6:35 a.m. on 14 June 2010 without a valid CRFL in violation of N.C. Gen. Stat. § 113-174.1; "[r]ecreational fishing" includes "any activity preparatory to" the taking of any finfish, "the taking of which is subject to regulation by the Marine Fisheries Commission[.]" N.C. Gen. Stat. § 113-174(4) (2011). The Tournament Rules Committee and Board of Directors determined that Wann's failure to have a valid CRFL before 5:51 p.m. on 14 June 2010 was a violation of the Tournament rules and disqualified the Citation and its catch.

On 25 June 2010, Plaintiffs initiated the underlying action in Dare County Superior Court by filing a complaint alleging, *inter alia*, breach of contract by Big Rock Foundation. Subsequently, Plaintiffs amended the complaint to include Defendants Crystal Coast Tournament and John Doe. In response, Big Rock Foundation and Crystal Coast Tournament claimed, *inter alia*, that Plaintiffs' claim was barred by Plaintiffs' material breach of the parties' contract. By consent orders, the parties agreed the contested prize money would not be paid pending an order of the court and joined as necessary parties the second and third place Tournament winners, Carnivore Charters and Edward Petrilli (the owners and/or managers of the vessel Carnivore), Tony Ross (the owner of the vessel Wet-N-Wild), and Jamie Williams. Subsequently, Defendants Big Rock Foundation and Crystal Coast Tournament filed a motion to change venue to Carteret County. Judge J. Carlton Cole granted the motion, which was entered on 27 August 2010.

On 18 January 2011, in Carteret County Superior Court, Defendants Big Rock Foundation and Crystal Coast Tournament moved for summary judgment with supporting depositions, answers to interrogatories, and other materials. Weeks later, Defendants filed two affidavits in support of the motion. On 25 February 2011, Plaintiffs moved to have the trial court disregard the affidavits as untimely and filed a motion requesting Judge Nobles recuse himself from further consideration of the lawsuit. A hearing on the parties' motions was held in the Craven County Courthouse in New Bern on 3 March 2011.

The trial court denied Plaintiffs' motion to recuse and their motion to strike Defendants' supporting affidavits, concluding the affidavits were supplemental to materials filed with the motion for summary judgment. The trial court also granted summary judgment in favor of Defendants on all issues, ordering Crystal Coast Tournament to pay the prize money to the second and third place Tournament winners and that Plaintiffs were to recover nothing from Defendants. Plaintiffs appeal.

## II. Jurisdiction

As Plaintiffs appeal from the final judgments of a superior court, appeal lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

## III. Analysis

### A. Change of Venue

[1] Plaintiffs argue that Judge Cole erred in granting Defendants' motion to change venue to Carteret County. Specifically, Plaintiffs contend Defendants implicitly waived their right to request a change of venue due to their participation in the litigation prior to filing their motion. We disagree.

Five days after the order to join the additional Defendants was entered, Big Rock Foundation and Crystal Coast Tournament filed a motion to change venue from Dare County to Carteret County. Defendants argued that because the majority of witnesses lived in Carteret County and a majority of the events underlying the suit occurred there, the convenience of the witnesses and the ends of justice were better served by changing the venue to Carteret County.

Plaintiffs cite this Court's decision in *Miller v. Miller* for the proposition that parties can waive the right to contest venue through implied consent. 38 N.C. App. 95, 97-98, 247 S.E.2d 278, 279-80 (1978) (waiver found where nearly one year passed between the defendant filing a motion to change venue and the first hearing where the defendant requested a continuance and then failed to appear at the second hearing). However, Plaintiffs' reliance on *Miller* is misplaced. Here, Defendants did not fail to pursue their motion by delay or inaction as occurred in *Miller* and cases cited therein. *See id.* Rather, Defendants timely filed their motion to change venue twenty-two days after they filed their answer to Plaintiffs' complaint. The timing of Defendants' motion does not constitute a waiver of their right to seek a change of

venue. *See Hawley v. Hobgood,* 174 N.C. App. 606, 607, 610, 622 S.E.2d 117, 118, 120 (2005) (distinguishing *Miller, supra,* and holding the defendant's nine-month delay between the filing of his motion to change venue and the filing of his notice of hearing on the motion was not an implied waiver of his right to seek a change of venue even after he had participated in discovery); *see also McCullough v. Branch Banking & Trust Co.,* 136 N.C. App. 340, 350, 524 S.E.2d 569, 575-76 (2000) (noting that motions to change venue based on the convenience of witnesses, pursuant to N.C. Gen. Stat. § 1-83(2) (1999), must be filed after the party's answer is filed).

Plaintiffs additionally argue that the ends of justice were not promoted by the change of venue to Carteret County. We disagree.

Pursuant to N.C. Gen. Stat. § 1-83(2) (2011), a court may change venue "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." Here, Defendants requested a change of venue to Carteret County because "the vast majority of witnesses to these events reside in Carteret County" and many of the underlying events occurred there. While we agree with Plaintiffs that the jury pool's knowledge of the Tournament is not a reason to change venue, we conclude that Judge Cole did not abuse his discretion in granting the motion. *See McCullough,* 136 N.C. App. at 350, 524 S.E.2d at 576 (finding no abuse of discretion in trial court's granting of motion for change of venue to county where most of the witnesses lived and all of the underlying events occurred). Plaintiffs' argument is overruled.

## B. Summary Judgment

[2] Plaintiffs argue that Judge Nobles committed reversible error in granting Defendants' motion for summary judgment because the trial court applied a standard that is not the law of North Carolina, requiring a showing of fraud, bad faith, or arbitrariness in order to overturn the decision of Crystal Coast Tournament to disqualify the Citation and its catch. Alternatively, Plaintiffs argue that if the trial court did not err in adopting this rule, summary judgment was not proper as Plaintiffs presented evidence raising a genuine issue of material fact as to whether the Tournament Rules Committee and the Board of Directors breached the contract between the parties by arbitrarily disqualifying the Citation and its catch. We disagree with both arguments and affirm the trial court's grant of summary judgment in favor of Defendants.

We review the trial court's order granting summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Summary judgment is proper only when the record reveals " 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Id.* at 523-24, 649 S.E.2d at 385 (quoting N.C. R. Civ. P. 56(c)).

The parties have not cited, and we have not found, a case from this state reviewing the decision of a tournament rules committee. Judge Nobles, "persuaded by authority from other jurisdictions," applied a test requiring evidence of fraud, bad faith, or arbitrariness to overturn the decision of the Crystal Coast Tournament Rules Committee and Board of Directors to disqualify the Citation and its catch. We find persuasive authority cited by Defendants in support of this test and hereby adopt it. *See Lough v. Varsity Bowl, Inc.*, 243 N.E.2d 61, 63 (Ohio 1968) (concluding that the decision by a bowling association to disqualify bowlers would not be disturbed absent a showing of "arbitrariness, fraud, or collusion" or that the bowlers were not afforded procedural due process). "[W]here the duly adopted laws of a voluntary association provide for the final settlement of disputes among its members, by a procedure not shown to be inconsistent with due process, its action thereunder is final and conclusive and will not be reviewed by the courts in the absence of arbitrariness, fraud, or collusion." *Id.*

Whether a board's decision is to be disturbed due to arbitrariness, fraud, or collusion is a question of law. *Id.* at 62. Because this standard gives great deference to the decision-making board, we equate it with an abuse of discretion standard and hold that such arbitrariness, fraud, or collusion is shown if the reasoning of the board is manifestly unreasonable. *See White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (The reviewing court may find abuse of discretion only if the trial court's actions are "manifestly unsupported by reason . . . [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision." (citation omitted)); *see also Smith v. Beaufort County Hosp. Ass'n, Inc.*, 141 N.C. App. 203, 210, 540 S.E.2d 775, 780 (2000), *aff'd per curiam*, 354 N.C. 212, 552 S.E.2d 139 (2001).

In addition to a showing of arbitrariness, fraud, or collusion, we hold a voluntary association's decision may also be overturned if it did not afford the complaining party procedural due process (notice and an opportunity to be heard). *See Lough*, 243 N.E.2d at 63 (The

action of a board is final and will not be disturbed on appeal in the absence of arbitrariness, fraud, or collusion or "a procedural scheme which is not in accord with due process.").

Even applying the *Lough* standard, Plaintiffs contend granting summary judgment was improper because a genuine issue of material fact exists as to whether the decision to disqualify the Citation and its catch from the Tournament was an arbitrary one resulting in a breach of the contract between Plaintiffs and Crystal Coast Tournament. We disagree. The burden of pleading and proving arbitrariness as a prima facie matter lies with the plaintiff. *See id.* (affirming the voluntary association's disqualification of a bowling team because the team failed to allege evidence indicating the decision was the result of arbitrariness, fraud, or collusion because this standard, though not officially state law, was the common law).

Here, an examination of Plaintiffs' amended complaint reveals no forecast of evidence raising any genuine issue of material fact that the decision of Crystal Coast Tournament to disqualify Big Rock Foundation was arbitrary. Rule 9 of the Tournament required partici- pants to comply with state and federal regulations. Rule 9 also required all boats to have an HMS permit on board when engaged in fishing as well as a "recreational fishing license [(CRFL)] for anyone participating in fishing aboard a vessel." The rules further stated that at least one person on each team is responsible for knowing the rules, including any changes announced at the Captain's Meeting. At the Captain's Meeting, the need for a CRFL was emphasized, and the cap- tains were warned not to risk losing one million dollars because of the lack of a license. Still, Wann admitted to the Tournament Rules Committee that he did not have a valid CRFL, thereby violating the Tournament rules and North Carolina law. Rule 20 stated, "Any boat breaching any of the above Tournament Rules may be disqualified, except as previously stated. Decisions of the Rules Committee and Board of Directors are final." Accordingly, the Citation was disquali- fied from the Tournament, and another vessel was named the winner of the Tournament. Nevertheless, the prize money has not been awarded to anyone because Defendants consented to an order to hold the contested prize money until this matter has been decided. Based on this evidence, we hold Plaintiffs presented no evidence that the board's decision to disqualify the Citation for failure to have a CRFL on board was manifestly unreasonable. As such, there is no genuine issue of material fact on whether the board's decision was infected by arbitrariness, collusion, or fraud.

**TOPP v. BIG ROCK FOUND.**

[221 N.C. App. 64 (2012)]

Plaintiffs also presented no evidence that the board did not afford Plaintiffs procedural due process, and, thus, we hold the trial court did not err in granting summary judgment for Defendants.

## C. Motion to Recuse

[3] Plaintiffs finally argue that Judge Nobles committed reversible error in denying their motion to recuse because it would be reasonable to question the impartiality of his ruling. Since Plaintiffs now have the benefit of a *de novo* review of the summary judgment issue in which this Court substitutes its opinion for that of the trial judge, whether this Court reverses or affirms Judge Noble's decision to remain on the case is for all practical purposes moot. Therefore, we do not reach the issue.

## IV. Conclusion

We conclude that Judge Cole did not err by granting Defendants' motion to change venue, and his order is affirmed. We also conclude that Judge Nobles did not err in granting Defendants' motion for summary judgment as Plaintiffs did not forecast sufficient evidence that their disqualification from the Big Rock Blue Marlin Tournament was arbitrary, and his order is also affirmed.

Affirmed.

Judge GEER concurs.

Judge HUNTER, Robert C., concurs in part and dissents in part in a separate opinion.

HUNTER, Robert C., Judge, concurring in part, and dissenting, in part.

I concur with the majority that the trial court did not err in granting Defendants' motion to change venue. I must, however, respectfully dissent from the majority's opinion for two reasons. First, I would reverse the trial court's order denying Plaintiffs' motion to recuse as I conclude Judge Nobles should have referred the motion to another judge for an independent hearing. Second, apart from the recusal motion, I conclude the trial court erred in granting summary judgment in favor of Defendants.

## I. Motion to Recuse

Plaintiffs argue that Judge Nobles committed reversible error in denying their motion to recuse as it would be reasonable to question the impartiality of his ruling. The majority concludes this issue is rendered moot by our *de novo* review of the trial court's decision to grant summary judgment. However, this Court has recently reviewed a recusal motion under similar circumstances. *See Sapp v. Yadkin County*, ____ N.C. App. ____, ____, 704 S.E.2d 909, 913-14 (2011) (reviewing the trial court's denial of a motion to recuse and granting of a motion for summary judgment where both orders were entered by the same judge). I conclude the majority's position may discourage trial courts from giving proper consideration to recusal motions, including referring the motions to another judge for disposition, when it is apparent a subsequent *de novo* review by an appellate court may negate an error in denying the motion. Upon reviewing Plaintiffs' argument, I conclude Judge Nobles should have referred the motion to be decided by another judge.

This Court reviews the denial of a motion to recuse for abuse of discretion. *SPX Corp. v. Liberty Mut. Ins. Co.*, ____ N.C. App. ____, ____, 709 S.E.2d 441, 450 (2011). The North Carolina Code of Judicial Conduct provides, in pertinent part, that "[o]n motion of any party, a judge should disqualify himself/herself in a proceeding in which the judge's impartiality may reasonably be questioned[.]" Code of Judicial Conduct, Canon 3(C)(1), 2012 Ann. R. N.C. 542. The party seeking disqualification bears the burden of producing substantial evidence that the judge would be unable to rule impartially due to personal bias, prejudice, or interest. *In re Faircloth*, 153 N.C. App. 565, 570, 571 S.E.2d 65, 69 (2002). If the allegations in a recusal motion are of sufficient force "to proceed to find facts, or if a reasonable man knowing all of the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner, the trial judge should either recuse himself or refer the recusal motion to another judge." *Id.*

Here, in support of their motion, Plaintiffs' called opposing counsel, Mr. Wheatly, whose testimony established that, in addition to practicing law together for a number of years, he and Judge Nobles vacationed together multiple times *after* Plaintiffs filed their complaint and while the case was pending. In response, Judge Nobles questioned whether Plaintiffs had any witnesses to show that in the six years since he ended his practice with Mr. Wheatly there had been

**TOPP v. BIG ROCK FOUND.**

[221 N.C. App. 64 (2012)]

any favoritism. Plaintiffs' counsel conceded there had been no indication of favoritism by Judge Nobles. Before denying Plaintiffs' motion, Judge Nobles concluded, *inter alia*, that he did not "see where there's any undue influence by the fact that [he] practiced law with Mr. Wheatly up until six years ago"; that he had not held any pecuniary interest in Mr. Wheatly's law firm for six years; that, as far as he was aware, all of the cases pending at the time he was practicing at Mr. Wheatley's law firm had been disposed of; and that he did not possess "any particular feeling of leaning towards one side or the other."

From my review of the transcript it is apparent that Plaintiffs' assertions were of sufficient force to prompt the trial court to proceed to find facts on the motion. Consequently, the trial judge should have recused himself or referred the motion to another judge. *Id.*; *N.C. Nat. Bank v. Gillespie*, 291 N.C. 303, 311, 230 S.E.2d 375, 380 (1976) (concluding the trial judge should have recused himself or referred the recusal motion to another judge as "it was not proper for th[e] trial judge to find facts so as to rule on his own qualification to preside when the record contained no evidence to support his findings"). After referring the motion to another judge, Judge Nobles could have filed affidavits or sought to provide oral testimony to address the allegations in the motion. *Gillespie*, 291 N.C. at 311, 230 S.E.2d at 380.

I do not consider the mere fact that Judge Nobles practiced law with Mr. Wheatly until six years before the hearing to be grounds for recusal or referral of the recusal motion to another judge. However, I conclude Mr. Wheatly's testimony regarding his vacations with Judge Nobles during the pendency of the action was sufficient to warrant referral of the recusal motion to another judge; this testimony would prompt a reasonable person to doubt the judge's ability to impartially rule on the motion. *Faircloth*, 153 N.C. App. at 570, 571 S.E.2d at 69.

In reaching this decision, I do not conclude that Judge Nobles's ruling on the motion was, in fact, partial to Defendants or that members of the judiciary may not socialize with members of the bar in the jurisdiction where he or she presides. *See* Code of Judicial Conduct, Canon 5(A), 2012 Ann. R. N.C. 548 ("A judge may . . . engage in the arts, sports, and other social and recreational activities, if such avocational activities do not substantially interfere with the performance of the judge's judicial duties."). Nor do I suggest that every motion to recuse should be referred to another judge. Rather, I merely apply

existing caselaw to the unique facts of this case and conclude that, here, the motion to recuse should have been decided by another judge. Under these facts, failure to refer the recusal motion would not only allow a reasonable person to question the impartiality of the judge's ruling on the motion, but may also result in a chilling effect on the moving party. Therefore, I would reverse Judge Nobles's denial of Plaintiffs' motion to recuse and remand for entry of an order referring the recusal motion to another superior court judge.

## II. Summary Judgment

Plaintiffs argue that Judge Nobles committed reversible error in granting Defendants' motion for summary judgment because the trial court applied a standard that is not the law of North Carolina requiring a showing of fraud, bad faith, or arbitrariness in order to overturn the decision of Crystal Coast Tournament to disqualify the Citation and its catch. I agree with the majority's adoption of the test set forth in *Lough v. Varsity Bowl, Inc.*, 243 N.E.2d 61, 63 (Ohio 1968) (concluding that the decision by a bowling association to disqualify bowlers would not be disturbed unless the association did not afford the contestants due process or there was a showing of "arbitrariness, fraud, or collusion" on the part of the association). However, I conclude summary judgment was not proper as a genuine issue of material fact exists as to whether the decision to disqualify the Citation and its catch from the Tournament was an arbitrary decision resulting in a breach of the contract between Plaintiffs and Crystal Coast Tournament.

Plaintiffs and Crystal Coast Tournament agree that upon Plaintiffs' entry into the Tournament they were parties to a contract; Plaintiffs paid an entry fee of $18,025.00 to compete for the Tournament prize money. *See Malone v. Topsail Area Jaycees*, 113 N.C. App. 498, 504, 439 S.E.2d 192, 195 (1994) (concluding the "plaintiff had essentially contracted for the prize money by entering the [golf] tournament and by hitting the hole in one"). "In order for a breach of contract to be actionable it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long v. Long*, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003). If either party to a bilateral contract commits a material breach of its terms, the nonbreaching party is excused from its obligation to perform. *Coleman v. Shirlen*, 53 N.C. App. 573, 577-78, 281 S.E.2d 431, 434 (1981), *superseded on other grounds by* N.C. Gen. Stat. § 50–13.2(a) (2011). However,

[w]hen there are several terms in a contract, a breach committed by one of the parties may be a breach of a term which the parties have not, upon a reasonable construction of the contract, regarded as vital to its existence. Such a term is said to be subsidiary, and a breach thereof does not discharge the other party.

*Statesville Flour Mills Co. v. Wayne Distrib. Co.*, 171 N.C. 708, 711, 88 S.E. 771, 773 (1916) (citation and quotation marks omitted) (concluding that the plaintiff's alleged breach of contract, if a breach at all, did not justify the defendant's failure to perform under the contract). Thus, where nonperformance of one contract condition "does not materially impair the benefit from the performance of the others" and the loss resulting from the breached condition is capable of compensation in damages, the breach is not fatal to performance of the contract. *Id.* at 712, 88 S.E. at 773 (citation and quotation marks omitted). Here, if Wann's failure to possess a CRFL was not a significant violation of the Tournament rules, it would not excuse Defendants from their obligations under the contract, which included refraining from arbitrary disqualifications.

Pursuant to the Tournament rules, disqualification is not required when a boat breaches one of the rules. Rather, rule 20 specifies that a boat "may be disqualified" for violating a Tournament rule. Because the Rules Committee and Board of Directors have discretion in reaching their decision, it follows that they must consider whether a violation of the rules is a material violation and what penalty is appropriate. If the violation is significant, disqualification would not be arbitrary; if the violation is not significant, however, some penalty short of disqualification may have been appropriate, such as a monetary penalty.

Here, Plaintiffs' violation of the Tournament rules did not afford Plaintiffs any competitive advantage. There were no allegations that Plaintiffs had "lines or teasers in the water" before official fishing hours began (rule 3) or outside of the Tournament fishing boundaries (rule 6); engaged in fishing on more than four of the allotted fishing days (rule 3); altered the weight of the fish (rule 16); or used prohibited equipment or a prohibited fishing method (rules 4 and 12). On the contrary, Plaintiffs contacted the Rules Committee and received express permission to hand-line the marlin in order to bring the fish on board the Citation. Assuming, *arguendo*, that Wann was required to possess a CRFL by state law or by the Tournament rules, the first mate's failure to possess a CRFL provided no advantage to Plaintiffs over other competitors; other prize winners did not possess individ-

ual CRFLs and instead relied upon their boat's blanket fishing license. Additionally, Wann acquired a CRFL before reentering state waters with the blue marlin.[1] Had Plaintiffs violated a rule that provided them with a competitive advantage, disqualification would not have been arbitrary. *See Ahrens v. McDaniel*, 336 S.E.2d 505, 506-07 (S.C. Ct. App. 1985) (where the fishing tournament grievance committee disqualified the contestants' fish upon discovery that their fish had ice in its stomach and where the tournament winner was determined by the weight of the fish and the tournament rules required there be "no foreign matter" inside the fish).

Additionally, the Tournament registration form and official weigh ticket required contestants to provide a HMS permit number, which each boat was required to have pursuant to rule 9. That these Tournament forms do not mention the CRFL is further evidence that the failure to possess a CRFL is not a breach of a material term of the contract. Thus, I conclude that Plaintiffs' disqualification for the first mate's failure to possess a CRFL raises a genuine issue of material fact as to whether the decision of the Rules Committee and Board of Directors was arbitrary and therefore a breach of the parties' contract. Accordingly, I would hold that summary judgment was improper and reverse that part of the trial court's order.

In sum, I concur with the majority that Judge Cole did not err by granting Defendants' motion to change venue. I would hold, however, that Judge Nobles erred in deciding Plaintiffs' motion to recuse instead of referring the motion to another judge. Consequently, I would reverse that part of the trial court's order and remand for entry of an order referring the motion to another superior court judge. Apart from the denial of the recusal motion, I would also hold that Judge Nobles erred in granting Defendants' motion for summary judg-

---

1. In support of their motion for summary judgment, Defendants submitted a 1998 Advisory Opinion from the North Carolina Attorney General's Office that stated the MFC's Marine Patrol could cite state-registered vessels for violations of state fishing laws in the waters of the EEZ, if certain conditions described in the Advisory Opinion were met. In opposition to Defendants' motion, Plaintiffs submitted a joint press release issued by the North Carolina Wildlife Resources Commission and the Division of Marine Fisheries th¬at stated "[r]ecreational anglers who catch fish from three miles to 200 miles offshore will be required to have this [Costal Recreational Fishing L]icense *in order to transport fish back to the shore.*" (Emphasis added.) While I do not conclude whether the Marine Patrol had the authority to issue a citation to Wann for activities in the EEZ, I note that Wann's citation for fishing without a CRFL was issued for fishing at 6:35 a.m., at which time the boat was in state waters and Wann was preparing bait.

ment as Plaintiffs raised a genuine issue of material fact as to whether their disqualification from the Big Rock Blue Marlin Tournament was arbitrary and thus a material breach of the parties' contract; I would reverse the portion of the order granting summary judgment in favor of Defendants. Accordingly, I do not reach Plaintiffs' argument regarding their motion to strike Defendants' affidavits filed in support of the motion for summary judgment.